**Joel BRANTLEY, Plaintiff,**

v.

**INSPECTORATE AMERICA
CORP., Defendant.**

**Civil Action No. H–09–2439.**

United States District Court,
S.D. Texas,
Houston Division.

Oct. 17, 2011.

Andrew Ross Frisch, Morgan Morgan PA, Davie, FL, Bernard R. Mazaheri, Morgan and Morgan, Orlando, FL, Jeffrey M. Gottlieb, Gottlieb & Associates, New York, NY, for Plaintiff.

William J. Wisdom, Ethan Dennis Carlyle, Martin Disiere et al., Houston, TX, for Defendant.

## ORDER

VANESSA D. GILMORE, District Judge.

Pending before the Court are Plaintiff's Motion for Summary Judgment (Instrument No. 130), Defendant's Motion for Summary Judgment (Instrument No. 133), and Plaintiff's Motion to Strike (Instrument No. 139).

### I.

### A.

Defendant Inspectorate America Corporation ("Inspectorate" or "Defendant") is a Delaware corporation subject to the requirements of the Fair Labor Standards Act ("FLSA"). (Instrument No. 1, at 2, 6; Instrument No. 7, at 3–4). Plaintiffs are a class of oil, gas and chemical inspectors ("Plaintiffs" or "Inspectors") employed by Defendant. (Instrument No. 43, at 2–3). Defendant adopted the "fluctuating work week" ("FWW") method of paying employees 40 years ago, and paid Inspectors according to the FWW method. (Instrument No. 43, at 3; Instrument No. 131–10; Instrument No. 133–1, at 2). However, Defendant began transitioning away from the FWW method in late 2006, and no longer uses it to pay Inspectors. (Instrument No. 133–1, at 1–2).

As Defendant applied the FWW, Plaintiffs earned a base weekly salary in weeks where they did not work on an offshore assignment, on a scheduled day off, or on a holiday. (Instrument No. 131–10). Because this base weekly salary was a "set salary ... regardless of the hours worked," when the number of hours that Plaintiffs worked in a week increased, the average hourly rate that they earned in that week decreased. (*See* Instrument No. 131–10).

Plaintiffs earned pay premiums in weeks where they worked on an offshore work assignment, a scheduled day off, or a holiday. The offshore premium was $55 per 24 hour period, and the clay off and holiday premiums were 18.6% of their base weekly salary. (Instrument No. 131–10). These premiums were added to Plaintiffs' base weekly salary, and therefore increased the total amount earned per week as well as the average hourly rate for a week. (*See* Instrument No. 131–10, at 2). Because Plaintiffs frequently earned these pay premiums, the amount that they earned per week varied. (*See, e.g.,* Instrument Nos. 131–3, 131–4, 131–6).

Plaintiffs also earned overtime pay when, as frequently happened, they worked more than 40 hours per week. (*See, e.g.,* Instrument Nos. 131–3, 131–4, 131–6). Their overtime pay was based on the base weekly salary, the premiums earned during the week, and the number of actual hours worked. Sick time and vacation time were excluded from the actual hours worked. (Instrument No. 131–10). Overtime pay was calculated as follows: "the base [weekly] salary plus any applicable bonuses or premiums (e.g., day-off, offshore, and/or holiday premiums), divided by the number of hours actually worked in [a] work week, divided by two (2), then multiplied by the number of hours over forty (40) worked during the work week." (Instrument No. 131–10, at 2). Under this formula, just as the average hourly rate earned in a week decreased when the number of hours worked increased, the overtime hourly rate earned in a week also decreased when the number of overtime hours increased.

Under Defendant's FWW formula, if an inspector's base weekly salary was $600, the inspector spent one day on an offshore assignment, and the inspector worked 56 hours, the inspector's pay would be calculated as follows. (*See* Instrument No. 131–10, at 2). The non-overtime pay for the week would be $655 [$655 = $600 (base weekly salary) + $55 (the offshore premium)]. (*Id.*). The average hourly rate for the week would be $11.70 [$11.70 = $655 (non-overtime pay) 56 (hours worked)]. (*Id.*). The overtime hourly rate would be $5.85 [$5.85 = $11.70 (average hourly rate) ÷ 2]. (*Id.*). The overtime pay would be $93.60 [$93.60 = $5.85 (overtime hourly rate) × 16 (number of overtime hours)]. Finally, the total pay for the week would be $748.60 [$748.60 = $655 [non-overtime pay] + $93.60 (overtime pay)]. (*Id.*).

Defendant distributed a memorandum entitled "Fluctuating Work Week Method of Overtime Compensation and Pay Rules" to its Inspectors, as well as an Employee Handbook which included the memorandum. (*See* Instrument No. 131–10; Instrument No. 131–11; Instrument No. 138, at 11; Instrument No. 131–14, at 12; Instrument No. 137, at 3). The memorandum described the FWW method set forth above, and included the above example of how to calculate overtime pay and total pay. (*See* Instrument No. 131–10; Instrument No. 131–14, at 12). However, two of the instant Plaintiffs have testified that they did not understand how their overtime pay was calculated. (*See* Instrument No. 131–7, at 8; Instrument No. 131–8, at 7).

In addition to describing the FWW method, Defendant's Employee Handbook stated that employees were not permitted to take accrued sick or vacation leave during their first 90 days of employment. (*See* Instrument No. 131–14, at 15–16). The Employee Handbook also stated that deductions to salary would be made for absences due to personal time off if employees had not yet accrued sufficient sick or vacation leave to cover the absences. (*See* Instrument No. 131–14, at 15–18, 20).

Defendant's payroll administrator, Diane Hill, testified in her deposition that these policies applied to Inspectors, and that salary deductions were made if an employee took sick or vacation leave during his first 90 days of employment. (*See* Instrument No. 131–5, at 28–31). Hill also stated that deductions were made to Inspectors' salaries when they began or ended employment during a pay period, or were suspended for disciplinary reasons. (Instrument No. 131–5, at 13–18).

The Department of Labor ("DOL") for the United States and New Jersey audited Defendant several times between 2000 and 2009. (Instrument No. 131–21; Instrument No. 133–1, at 4). Each time, the auditors either found that Defendant's payment of salary premiums either did not violate the FWW requirements, or that Defendant owed unpaid overtime to its employees because it had failed to include all of its salary premiums in its calculations of the regular and overtime hourly rates under the FWW. (Instrument No. 131–21; Instrument No. 137–8). The record does not contain any evidence showing that these audits addressed any of Defendant's policies concerning deductions to employee salaries.

Finally, the record does not show whether Defendant ever consulted an attorney regarding the legality of its policies concerning salary deductions or salary premiums. Defendant has not asserted that its pay practices were approved by an attorney. (*See* Instrument No. 131–2, at 11).

### B.

On July 30, 2009, Plaintiff Joel Brantley ("Plaintiff" or "Brantley") filed a complaint against his employer Inspectorate America Corporation ("Inspectorate" or "Defendant"), on behalf of himself and other similarly situated current and former employees. (Instrument No. 1). Plaintiff alleges that Defendant has willfully violated the Fair Labor Standards Act ("FLSA") by paying inadequate overtime wages, and failing to make, keep and preserve records sufficient to determine the wages, hours, and other conditions and practices in violation of the FLSA. (Instrument No. 1, at 6–7). Plaintiff seeks designation as a collective action and issuance of notice to similarly situated class members under the FLSA. (Instrument No. 1, at 7–8). Plaintiff also seeks unpaid wages and overtime compensation, additional liquidated damages, attorney's fees and costs, pre- and post-judgment interest, a declaratory judgment and injunction, and any other relief deemed just and proper by the Court. (Instrument No. 1, at 7–8).

Defendant filed an answer on October 13, 2009. (Instrument No. 7). As affirmative defenses, Defendant asserts that Plaintiff cannot establish that the alleged violations were willful, that Plaintiff's claims are subject to a two-year statute of limitations, and that any violations of the FLSA were made in good faith and on reasonable grounds. (Instrument No. 7, at 1–2). Defendant also asserts that Plaintiff is not similarly situated to others in the class he purports to represent, that Plaintiff is not typical of the class he purports to represent, and that Plaintiff cannot satisfy the FLSA's requirements to maintain a collective action. (Instrument No. 7, at 1–2).

Plaintiff filed a class certification motion on January 4, 2010. (Instrument No. 20). The motion hearing was held on March 5, 2010. At the hearing, the Court stated that Plaintiff's motion was granted in part and denied in part. On April 14, 2010, the Court issued an order granting and denying in part Plaintiff's motion for certification of class action. (Instrument No. 43). The Court ordered Plaintiff to issue a notice and consent form to putative class members, and ordered Defendant to pro-

vide contact information to Plaintiff for oil, gas and chemical inspectors who had worked for Defendant in the previous three years, and who were subject to the disputed pay policy. (Instrument No. 43, at 1). The Court denied all other relief sought in Plaintiff's class certification motion. (Instrument No. 43, at 1).

After being certified as a class pursuant to the Court's April 14, 2010 order (Instrument No. 43), Plaintiffs filed their motion for summary judgment on July 1, 2011. (Instrument No. 130). Plaintiffs argue that Defendant's use of the FWW pay method violates the FLSA because Defendant did not pay a fixed weekly salary due to its payment of salary premiums. Plaintiffs also argue that Defendant violated the FLSA because its policies of making salary deductions made it impossible to establish a "clear mutual understanding" regarding a fixed weekly salary. (Instrument No. 130, at 23–29). Plaintiffs further argue that, because the FWW method is invalid here, their unpaid overtime pay must be calculated based on a 40 hour work week and time and one-half. (Instrument No. 130, at 29–31). Finally, Plaintiffs argue that they should be awarded liquidated damages in an amount equal to their unpaid overtime pay. (Instrument No. 130, at 29–35).

Defendant filed its motion for summary judgment on July 1, 2011. (Instrument No. 133). Defendant argues that it met the FLSA requirements for applying the FWW, and that Defendant's salary premiums and salary deductions did not invalidate its use of the FWW. Defendant also argues that unpaid overtime wages should be calculated based on actual hours worked rather than a 40 hour work week, and that liquidated damages are not proper. (Instrument No. 133, at 6–16, 18–20). In addition, Defendant argues that the statute of limitations should be two years because it did not act willfully. (Instrument No. 133, at 16–18).

Plaintiffs responded to Defendant's motion for summary judgment on August 1, 2011. (Instrument No. 136). Plaintiffs again argue that Defendant violated the FLSA's requirements for applying the FWW by failing to pay a fixed salary, and failing to establish a "clear mutual understanding" regarding the fixed salary. (Instrument No. 136, at 1–10). Plaintiffs also argue that unpaid overtime must be based on a 40 hour work week rather than actual hours worked, and that Defendant is liable for liquidated damages. (Instrument No. 136, at 10–15). Finally, Plaintiffs argue that the statute of limitations should be three years because Defendant acted willfully. (Instrument No. 136, at 20–22).

Defendant filed its response to Plaintiffs' motion for summary judgment (Instrument No. 130) on August 1, 2011. (Instrument No. 138). Defendant argues that it paid a fixed weekly salary, that premium and bonus payments do not invalidate the use of the FWW method, and that the Parties had a "clear mutual understanding" that Defendant would pay a fixed weekly salary despite Defendant's salary premiums and deductions. (Instrument No. 138, at 6–15). Defendant also argues that any unpaid overtime pay must be calculated based on an hourly rate with the actual hours worked per week as a denominator rather than 40 hours per week. (Instrument No. 138, at 15–19). Finally, Defendant argues that liquidated damages are inappropriate. (Instrument No. 138, at 19–24).

On August 9, 2011 Plaintiffs filed a motion to strike Defendant's summary judgment evidence. (Instrument No. 139). Plaintiffs seek to strike several portions of the declaration of Diane Hill ("Hill"), Defendant's payroll administrator. Plaintiffs argue that paragraph 28 should be strick-

en under the sham affidavit doctrine because it contradicts earlier deposition testimony, and that paragraph 40 should be stricken because it is hearsay. (Instrument No. 139, at 1–7). In addition, Plaintiffs seek to strike Hill's references to "set salary" on the basis that they are legal conclusions rather than factual assertions. (Instrument No. 139, at 6–7).

Plaintiffs filed their reply in support of their motion for summary judgment (Instrument No. 130) on August 9, 2011. (Instrument No. 140). Plaintiffs argue that Defendant misinterprets applicable case law regarding whether the FWW method is valid when bonuses and premiums are paid to employees. (Instrument No. 140, at 2–4). In addition, Plaintiffs again argue that Defendant did not pay a fixed weekly salary, that the Parties did not have a "clear mutual understanding" regarding whether Plaintiffs were paid a fixed weekly salary, and that damages should be calculated based on a 40 hour work week. (Instrument No. 140, at 3–6). Plaintiffs also repeat their argument that Defendant must pay liquidated damages. (Instrument No. 140, at 6–9).

Defendant filed its reply in support of its motion for summary judgment on August 15, 2011. (Instrument No. 141). Defendant argues that its payment of salary premiums did not violate the FWW's fixed salary requirement, and that its salary deductions did not violate the FWW's "clear mutual understanding" requirement. (Instrument No. 141, at 1–6). Defendant also argues that any unpaid overtime must be calculated based on hourly rate with the actual hours worked in the denominator, rather than a 40 hour work week. (Instrument No. 141, at 6–9). Finally, Defendant argues that liquidated damages are not proper, and that Plaintiffs have not met their burden of showing that a three year statute of limitations would apply because

Defendant acted willfully. (Instrument No. 141, at 9–10).

Defendant responded to Plaintiffs' motion to strike on August 30, 2011. (Instrument No. 142). Defendant argues that paragraph 28 of Hill's declaration supplements but does not contradict her prior deposition testimony, and that paragraph 40 of Hill's declaration was within her "sphere of responsibility" and was therefore not hearsay. (Instrument No. 142, at 1–6). Defendant also argues that Hill's references to "set salary" were not legal conclusions because she was merely referring to Defendant's internal description of the FWW rules, which also use the phrase "set salary." (Instrument No. 142, at 7).

## II.

■ Plaintiffs seek to strike several portions of the declaration of Diane Hill ("Hill"), Defendant's payroll administrator. Plaintiffs argue that paragraph 28 should be stricken under the sham affidavit doctrine because it contradicts earlier deposition testimony, and that paragraph 40 should be stricken because it is hearsay. (Instrument No. 139, at 1–7). In addition, Plaintiffs seek to strike Hill's references to "set salary" on the basis that they are legal conclusions rather than factual assertions. (Instrument No. 139, at 6–7).

As the Court's analysis will show, the Court did not consider or rely upon these parts of Hill's declaration in its determination of the Parties' Motions for Summary Judgment. Accordingly, Plaintiffs' motion to strike is **DENIED as moot. (Instrument No. 139).** *See Jones v. United Parcel Service, Inc.,* No. 3:06–cv–1535–L, 2008 WL 2627675 at *6 (N.D.Tex. June 30, 2008) (denying as moot the plaintiff's objections and motion to strike summary judgment evidence where the court determined that the evidence was "not central to the court's conclusions, and sustaining

the parties' objections would not change the result."). *See also, Hansen v. Aon Risk Services of Texas,* 473 F.Supp.2d 743, 754 (S.D.Tex.2007).

## III.

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. A fact is "material" if its resolution in favor of one party might affect the outcome of the suit under governing law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also U.S. v. Arron,* 954 F.2d 249, 251 (5th Cir.1992). An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. If the evidence rebutting the motion for summary judgment is only colorable or is not significantly probative, summary judgment should be granted. *See Id.* at 2511; *see also Thomas v. Barton Lodge II, Ltd.,* 174 F.3d 636, 644 (5th Cir.1999). The summary judgment procedure, therefore, enables a party "who believes there is no genuine issue as to a specific fact essential to the other side's case to demand at least one sworn averment of that [specific] fact before the lengthy process continues." *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 886–88, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990).

Under Rule 56(c), the moving party bears the initial burden of informing the district court of the basis for its belief that there is an absence of a genuine issue for trial and of identifying those portions of the record that demonstrate such absence. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also Burge v. Parish of St. Tammany,* 187 F.3d 452, 464 (5th Cir.1999).

Where the moving party has met its Rule 56(c) burden, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward 'with specific facts showing that there is a *genuine issue for trial.*'" *Matsushita,* 475 U.S. at 586–87, 106 S.Ct. 1348 (quoting FED.R.CIV.P. 56(e)) (emphasis in original). *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Engstrom v. First Nat'l Bank,* 47 F.3d 1459, 1462 (5th Cir. 1995). To sustain the burden, the nonmoving party must produce evidence admissible at trial. *See Anderson,* 477 U.S. at 242, 106 S.Ct. 2505; *see also Thomas v. Price,* 975 F.2d 231, 235 (5th Cir.1992) (stating that "[t]o avoid a summary judgment, the nonmoving party must adduce admissible evidence which creates a fact issue."). Further, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgement." *Ragas v. Tennessee Gas Pipeline Co.,* 136 F.3d 455, 458 (5th Cir. 1998) (citing *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 915–16 & n. 7 (5th Cir.1992)).

The Court reviews the facts in the light most favorable to the nonmovant and draws all reasonable inferences in favor of the nonmovant. *See Brown v. Bunge Corp.,* 207 F.3d 776, 781 (5th Cir.2000). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505.

## IV.

The Parties dispute whether Defendant met the requirements under the Fair Labor Standards Act for applying the "fluctu-

ating work week" payment method to Plaintiffs. In addition, the Parties dispute how much Defendant owes Plaintiffs in overtime pay, whether Defendant owes liquidated damages, and whether Defendant is subject to a two-year or three-year statute of limitations.

## A.

Under the "fluctuating workweek method" ("FWW") of payment set forth in the Fair Labor Standards Act ("FLSA"), a person "employed on a salary basis may have hours of work which fluctuate from week to week and the salary may be paid him pursuant to an understanding with his employer that he will receive such fixed amount as straight time pay for whatever hours he is called upon to work in a workweek, whether few or many." 29 C.F.R. § 778.114(a); *Yadav v. Coleman Oldsmobile, Inc.,* 538 F.2d 1206 (5th Cir.1976) (per curiam). In such cases, the regular rate of pay for purposes of calculating overtime pay is determined by dividing the fixed salary for the week by the total hours actually worked in each particular week. *Blackmon v. Brookshire Grocery Co.,* 835 F.2d 1135, 1138–39 (5th Cir.1988); *Yadav,* 538 F.2d at 1206.

Before an employer may apply the fluctuating workweek ("FWW") method, four conditions must be satisfied:

(1) the employee's hours must fluctuate from week to week;

(2) the employee must receive a fixed salary that does not vary with the number of hours worked during the week (excluding overtime premiums);

(3) the fixed amount must be sufficient to provide compensation every week at a regular rate that is at least equal to the minimum wage; and

(4) the employer and employee must share a "clear mutual understanding" that the employer will pay that fixed

salary regardless of the number of hours worked.

29 C.F.R. § 778.114(a), (c); *O'Brien v. Town of Agawam,* 350 F.3d 279, 288 (1st Cir.2003). The employee bears the burden of proving that the employer did not meet the requirements for applying the FWW method. *Samson v. Apollo Resources, Inc.,* 242 F.3d 629, 636 (5th Cir.2001). The Parties do not dispute the first and third of these conditions, which are that Plaintiffs' hours fluctuated from week to week, and that Plaintiffs were paid a regular rate that is at least equal to the minimum wage. However, the Parties dispute the second and fourth conditions regarding whether Plaintiffs received a fixed salary and whether there was a "clear mutual understanding" regarding Plaintiffs' salary.

## 1.

Plaintiffs argue that Defendant did not meet the FWW's requirement that the employee receive a fixed salary, excluding overtime premiums, that does not vary with the number of hours worked during the week. According to Plaintiffs, their salary was not fixed because Defendant's payment of premiums for working on offshore assignments, days off and holidays caused their salaries to vary from week to week regardless of the number of hours worked during the week. However, Defendant argues it did pay a fixed salary, and that employers may apply the FWW method even when they pay their employees off shore, day-off and holiday premiums.

Courts interpreting the FWW have found that an employer's payment of premiums for off-shore, day-off or holiday work assignments has violated the FLSA requirement that the employee receive a fixed salary. *See, e.g. Brumley v. Camin Cargo Control, Inc.,* No. 08–1798(JLL), 2010 WL 1644066 *6–7 (D.N.J. Apr. 22,

2010) (the "fixed salary" requirement for application of the FWW was not met because the employer paid petroleum inspectors day-off pay and holiday pay in addition to regular salary and overtime); *Ayers v. SGS Control Servs., Inc.*, No. 03 Civ. 9077 RMB, 2007 WL 646326 *9–10 (S.D.N.Y. Feb. 27, 2007) (the fixed salary requirement was not met because the employer paid oil, gas and chemical inspectors "lump sum premiums" for day-off pay and holiday pay in addition to their regular salary and overtime); *Adeva v. Intertek USA, Inc.*, No. 09–1096(SRC), 2010 WL 97991 (D.N.J. Jan. 11, 2010) (the fixed salary requirement was not met because the employer paid oil, gas and chemical inspectors premiums for off-shore, day-off and holiday work assignments in addition to their non-overtime compensation).

Courts have also found that the payment of other shift premiums to employees precludes application of the FWW method. *See, e.g. O'Brien v. Town of Agawam*, 350 F.3d 279, 288–89 (1st Cir.2003) (payment of a $10 night shift differential to police officers was inconsistent with the fixed salary requirement for application of the FWW method); *Dooley v. Liberty Mut. Ins. Co.*, 369 F.Supp.2d 81, 85–86 (D.Mass. 2005) (payment of a premium rate for Saturday work when less than 40 hours have been worked precludes application of the FWW method).

Plaintiffs here were paid premiums for off-shore assignments, and working on days off and holidays. These types of premiums are similar to those in the above cases, in which premiums were paid according to the time (such as night, weekend, holiday, or day off) or type (such as off-shore) of the employee's work assignment. Furthermore, Plaintiffs' premiums were added to their non-overtime compensation for each week. Thus, as in the above cases, the instant premiums caused non-overtime compensation to vary from week to week. Finally, in three of the above cases, *Brumley, Ayers,* and *Adeva,* not only were similar premiums and variations in non-overtime pay involved, but the employees, like the instant Plaintiffs, worked as oil, gas and chemical inspectors. Accordingly, the Court finds that Defendant's payments of offshore, day-off and holiday premiums violates the fixed salary requirement for applying the FWW.

Defendant cites several cases in support of its argument that the payment of offshore, day-off, and holiday premiums does not preclude application of the FWW method. However, Defendant's cases are inapplicable here. In *Aiken v. County of Hampton, South Carolina,* 977 F.Supp. 390, 397 (D.S.C.1997), the court found that the employer met the requirements for applying the FWW and stated that holiday pay was a "fringe benefit" rather than part of an employee's salary. *Aiken,* 977 F.Supp. at 397. However, the holiday pay in *Aiken* differed from the holiday premiums at issue here. The plaintiff in *Aiken* "would have been entitled to the 16 hours holiday pay whether or not he had worked on the two holidays," *Aiken,* 977 F.Supp. at 399, whereas the instant Plaintiffs were paid holiday premiums only if they actually worked on holidays. In *Cash v. Conn Appliances, Inc.,* 2 F.Supp.2d 884 (E.D.Tex.1997), as in *Aiken,* the court found that the employer met the requirements for applying the FWW. However, the bonus and incentive payments paid to the appliance store employees in *Cash* were not described or discussed by the court, because the employer conceded that it should not have excluded them from its employees' non-overtime compensation prior to the court's ruling. *Cash,* 2 F.Supp.2d at 903. *Cash* is therefore not on point. In *Inniss v. Tandy Corp.,* 141 Wash.2d 517, 7 P.3d 807 (2000), the plaintiffs were Radio Shack store managers

that received commissions, special incentive bonuses, and annual bonuses. However, the *Inniss* court did not describe or discuss the commissions and bonuses, and decided the case under Washington state law. Finally, in *Lance v. The Scotts Co.*, 2005 WL 1785315 (N.D.Ill. July 21, 2005), the court found that the employer could apply the FWW method although the plaintiff was paid commissions pursuant to 29 § C.F.R. 778.117 and 29 C.F.R. § 778.118. *Lance,* at *6–7. These commissions differ from the instant premiums, which are not governed by those regulations. *See* 29 § C.F.R. 778.117 and 29 C.F.R. § 778.118.

Defendant also cites several cases in which courts found that employees that had been misclassified as "exempt" salaried employees under the FLSA were entitled to unpaid overtime pay calculated under the FWW method despite the fact that the employees had received bonuses or commissions. *See Perez v. RadioShack Corp.*, 2005 WL 3750320 *5 (N.D.Ill. Dec. 14, 2005) (finding that the retroactive FWW calculation of overtime pay for Radio Shack store managers who had received sales-based bonuses and commissions included the bonuses and commissions); *Clements v. Serco, Inc.*, 530 F.3d 1224, 1227 (10th Cir.2008) (finding that the FWW method applied to retroactive calculation of overtime pay for military recruiters who had received commissions for reaching certain quotas); *Spring v. Washington Glass Co.*, 153 F.Supp. 312, 318–19 (D.C.Pa.1957) (finding that, after the parties had agreed that retroactive calculation of overtime pay should proceed under the FWW method, the FWW calculation should include production-based bonuses paid to the foreman in a manufacturing plant). These cases do not support Defendant's position, because they involved the payment of sales-based or production-based bonuses and commissions. In contrast, the off-shore, holiday, and day-off premiums at issue here were paid based on the time or type of work assignment.

In summary, as discussed above, the applicable case law shows that Defendant's payment of off-shore, holiday and day-off premiums to Plaintiffs violated the fixed salary requirement for applying the FWW method.

**2.**

The Parties also dispute whether Defendant met the fourth requirement for applying the FWW method, which is that there be a "clear mutual understanding" that Plaintiffs were being paid a fixed salary. Plaintiffs argue that a "clear mutual understanding" did not exist because Defendant did not inform them that they were paid under the FWW method, and they did not understand how they were paid. Plaintiffs also argue that a "clear mutual understanding" was not possible because Defendant made impermissible deductions to their salaries. However, Defendant argues that there was a "clear mutual understanding" because it informed Plaintiffs of the FWW method, and because the FLSA does not require that employees actually understand and be able to calculate how they were paid. Defendant also argues that the deductions at issue did not prevent a "clear mutual understanding" and were permissible under the FLSA.

Here, contrary to Plaintiff's assertions, Defendant took adequate steps to inform them of the FWW method by distributing the "Fluctuating Work Week Method of Overtime Compensation and Pay Rules" memorandum to Inspectors. The distribution of this memorandum, rather than a complete understanding of how to calculate overtime, is sufficient to show "clear mutual understanding." *See Bailey v. County of Georgetown,* 94 F.3d 152, 156 (4th Cir.1996) ("Neither the regulation [29 C.F.R. § 778.114] nor the FLSA

in any way indicates that an employee also must understand the manner in which his or her overtime pay is calculated.").

■ However, Plaintiffs also assert that Defendant made impermissible deductions to their salaries for sick and vacation leave. Under the FWW, employers are not allowed to make deductions to an employee's fixed salary for sick leave or vacation leave, even if the employee has not yet accrued sufficient leave to cover their absence. *Hunter v. Sprint Corp.,* 453 F.Supp.2d 44, 60–61 (D.D.C.2006). Despite this prohibition, Defendant's Employee Handbook states that new employees were not permitted to use their accrued sick or vacation leave "until they have successfully completed their ninety (90) day probationary period." (*See* Instrument No. 131–14, at 15–16). Furthermore, Defendant's payroll administrator, Diane Hill, testified that this policy applied to Inspectors and would result in salary deductions. (Instrument No. 131–5, at 28–29).

Defendant argues this evidence is not sufficient to show that deductions for sick leave and vacation leave were made. (Instrument No. 138, at 11, 21). In support, Defendant cites *Ahern v. County of Nassau,* 118 F.3d 118 (2d Cir.1997) and *O'Donnell v. Robert Half Int'l, Inc.,* 534 F.Supp.2d 173 (D.Mass.2008). In *Ahern* and *O'Donnell,* the employees argued that salary deductions were being made based on policy statements in an employee manual and handbook. *Ahern,* 118 F.3d at 121–22; *O'Donnell,* 534 F.Supp.2d at 180–81. The policy statements described instances in which deductions could be made, rather than instances in which the deductions would definitely be made. *Ahern,* 118 F.3d at 121–22; *O'Donnell,* 534 F.Supp.2d at 180–81. Because of this ambiguity, the courts found the policy statements were not sufficient to show a "significant likelihood" that the deductions were in fact

being made. *Ahern,* 118 F.3d at 121–22; *O'Donnell,* 534 F.Supp.2d at 180–81. Here, by contrast, the policy statement in the Employee Handbook is not ambiguous. It clearly states that employees may not take sick or vacation leave during their first 90 days of employment. Furthermore, Hill has stated that the policy applied to Inspectors and would result in deductions to their salaries. Accordingly, the Court finds that Plaintiff has shown that Defendant made impermissible deductions to Plaintiff's salary for sick and vacation leave.

Plaintiffs furthermore assert that impermissible deductions were made when Inspectors who were employed by Defendant were not available to work on all the days of the week, took personal time off, were disciplined, failed to return company-issued equipment, or returned equipment that was damaged. (*See* Instrument No. 131, at 6). However, Plaintiff has failed to show that these deductions occurred at all, or occurred in a way that was impermissible under the FLSA. In support of their assertion regarding deductions when employees were not available to work on all the days of the week, Plaintiffs point to deposition testimony from Hill, in which she explains that deductions were made only if the employee began or ended his employment with Defendant during the week. (Instrument No. 131–5, at 13–15). In other words, Hill stated that employees were paid the full amount of their base weekly salary if they were employees during the entire week, and that employees were paid less than the base weekly salary if they were employees for only part of the week. Her testimony does not support Plaintiffs' assertion, which is that deductions were made to the salaries of Inspectors who were employees during an entire week, but were not available to work on all of the days of the week. Plaintiffs have also provided 40 pages of payroll records

without any explanation of how to interpret them, or any documents such as time sheets that would assist the Court in interpreting them. (Instrument No. 131–16). Defendant, on the other hand, has provided an affidavit from Hill that addresses each of the 40 pages of records in detail, and explains that they show instances where employees began or ended their employment during the pay period; were disciplined; received holiday pay, sick pay or vacation pay; were paid under Defendant's new hourly method; were on disability; or performed no work during a week. (Instrument No. 138–2). Accordingly, the Court finds that Plaintiffs have failed to establish that Defendant made deductions to their salaries when they were not available to work on all seven days of the week.

With respect to personal time off, Plaintiffs point to the Employee Handbook, which states that deductions would be made for personal time off if they had not yet accrued sufficient sick or vacation leave to cover the absence, as well as Hill's testimony that this policy applied to Inspectors. (*See* Instrument No. 131–14, at 15–18, 20; Instrument No. 131–5, at 30–31). These absences for personal time off may be characterized as "willful absences" taken to conduct personal business under the FLSA. *See Cash*, 2 F.Supp.2d at 895, 899. However, Plaintiffs have not pointed to any pay records showing that deductions for these willful absences occurred frequently. Because the FLSA does not bar occasional deductions for willful absences, the existence of Defendant's personal time off policy without evidence showing that it resulted in frequent deductions is not sufficient to show a FLSA violation. *See Cash*, 2 F.Supp.2d at 906 (finding that broad policy statements regarding willful absences and evidence of only occasional willful absences are not sufficient to show a violation of the FLSA). The Court finds that Plaintiffs have failed

to show that Defendant's personal time off policy resulted in impermissible deductions to their salaries.

Finally, the FLSA permits deductions to salary to be made for disciplinary reasons. *See* Op. Letter of the Wage & Hour Div., 1999 WL 1002415 (May 28, 1999). Plaintiff has not provided any evidence showing why the Court should find that Defendant's disciplinary deductions were impermissible. Furthermore, the Court has not found any case law showing that the FLSA bars employers from making salary deductions for damaged or unreturned equipment, and Plaintiff has not cited any case law on this point. The Court thus finds that Plaintiff has not established that Defendant made impermissible deductions for disciplinary reasons or damaged or unreturned equipment.

In summary, although Defendant informed Plaintiffs of the FWW method, they made impermissible salary deductions for sick leave and vacation leave during the first 90 days of an Inspector's employment. Plaintiffs have not shown that Defendants made any other impermissible salary deductions. In *O'Brien*, the court found that the "clear mutual understanding" requirement for the FWW was not met because the employer had paid salary premiums that violated the fixed salary requirement of the FWW and thereby removed the basis for a "clear mutual understanding" regarding the fixed salary. *See O'Brien*, 350 F.3d at 290 (finding that there is no "clear mutual understanding" where the "method of calculating overtime is premised on assumptions inconsistent with § 778.114."). Similarly, in *McCumber v. Eye Care Ctr. of Am., Inc.*, 2011 WL 1542671 (M.D.La. Apr. 20, 2011), the court ruled in favor of the plaintiff, who had argued that the "clear mutual understanding" requirement was not met because his pay was reduced twice when he worked

less than 40 hours in a week. *See id.*, at *12 (finding that because plaintiff's pay had been reduced, "no sincere argument may be made by defendants that its intention was to pay plaintiff a set salary regardless of the hours he worked in a given week, as required for the application of the FWW method."). The Court finds the reasoning in *O'Brien* and *McCumber* persuasive. In light of the salary deductions imposed by Defendant's sick and vacation leave policy, there is no "clear mutual understanding" that Plaintiffs were being paid a fixed salary.

Plaintiff has shown that Defendant violated the "clear mutual understanding" requirement for application of the FWW, as well as the fixed salary requirement. Accordingly, Plaintiffs Motion for Summary Judgment (**Instrument No. 130**) is **GRANTED** and Defendant's Motion for Summary Judgment (**Instrument No. 133**) is **DENIED** with respect to whether Defendant violated the FLSA by applying the FWW method.

**B.**

■ Plaintiffs argue that because the FWW does not apply here, unpaid overtime must be calculated based on the FLSA default position, in which hourly rates are based on a regular work week of 40 hours, and overtime rates are equal to time-and-one-half. In other words, Plaintiffs argue that in order to obtain the regular hourly rate for a week, the total non-overtime pay for the week should be divided by 40. Plaintiffs furthermore argue that the overtime hourly rate should then be equal to 1.5 times the regular rate. (Instrument No. 130, at 29–31).

However, Defendant argues that even if the FWW does not apply, the regular hourly rates should be calculated based on the number of actual hours worked during the week. In other words, Defendant argues that in order to obtain the regular

hourly rate for a week, the total non-overtime pay for the week should be divided by the actual hours worked during the week. Defendant does not dispute that if the FWW does not apply, the overtime hourly rate should equal 1.5 times the regular hourly rate. (Instrument No. 133, at 23–24; Instrument No. 141, at 6–9).

■ In order to determine the regular hourly rate of pay, the Court must ascertain the number of hours per week the salary was "intended to compensate." *See* 29 C.F.R. § 778.113(a). This intended number of hours can be determined by examining what happens under the employment contract, and may include non-overtime and overtime hours. *Singer v. City of Waco, Tex.*, 324 F.3d 813, 824 (5th Cir.2003). For example, in *Singer*, a case cited by Defendant, the court found that because the plaintiffs had regularly worked 120 or 96 hours per work period, their hourly rate was based on 120 or 96 hours rather than the number of non-overtime hours worked per work period. *Id.*, at 824–25. In *Yourman v. Dinkins*, 865 F.Supp. 154, 165 (S.D.N.Y.1994), *aff'd*, 84 F.3d 655 (2d Cir.1996), *vacated on other grounds*, 519 U.S. 1145, 117 S.Ct. 1078, 137 L.Ed.2d 213 (1997), a case cited by Plaintiffs, the court found that the hourly rate was based on 35 hours per week for civilian plaintiffs and 40 hours for the uniformed plaintiffs because "those were the hours used by defendants in setting plaintiffs' weekly schedules" and because "they were also the hours reflected on plaintiffs' paystubs." *Id.*, at 165.

Here, in contrast to both *Yourman* and *Singer*, the record does not show that Plaintiffs regularly worked a certain number of hours per week. Instead, payroll records provided by Plaintiffs show that the number of hours that they worked varied greatly from week to week, and frequently did not correspond to a 40 hour

work week. These variations, and the fact that Plaintiffs' hours frequently did not correspond to a 40 hour work week, weigh against calculating Plaintiffs' regular hourly rate based on a 40 hour work week.

Plaintiffs nonetheless argue that in situations with employees and hours similar to the instant case, courts have calculated the regular hourly rate based on the default FLSA position of a 40 hour work week. In support, Plaintiffs *cite Ayers v. SGS Control Servs., Inc. ("Ayers II")*, 2007 WL 3171342 (S.D.N.Y. Oct. 9, 2007) and *Brumley*, 2010 WL 1644066 (D.N.J. Apr. 22, 2010). Like the instant Plaintiffs, the plaintiffs in *Ayers II* and *Brumley* were inspectors in the energy industry whose hours varied from week to week. In addition, in both cases, as in the instant case, the courts found that the plaintiffs were owed unpaid overtime because their employers had failed to meet the requirements for applying the FWW. The court in *Ayers II* stated that the "the FWW method will be forfeited" and that employer owed unpaid overtime based on the FLSA default of "time-and-a-half for all hours over 40." *Ayers II*, 2007 WL 3171342, at *3. Likewise, in *Brumley*, the Court found that damages could not be calculated under the FWW method, and that the employer instead owed unpaid overtime based on the "default FLSA method: 'time-and-a-half for all hours over 40.'" *Brumley*, 2010 WL 1644066 at *7 (citing *Ayers II* ). However, *Ayers II* and *Brumley* do not aid Plaintiffs here. Although the *Ayers II* and *Brumley* courts address the time-and-one-half issue in calculating the overtime rate, they never actually address the issue of how to calculate the regular hourly rate. Thus, the cases support the proposition that that the overtime rate for the number of hours worked above 40 should equal one and one-half times the regular rate. They do not support the proposition that the regular rate should be calculated based on a 40 hour work week.

Defendant contends that *Blackmon v. Brookshire Grocery Co.*, 835 F.2d 1135, 1138–1139 (5th Cir.1988) supports its position that regular hourly rate should be based on the actual hours worked. The employees in *Blackmon* were meat market managers who had been misclassified as exempt. *Id.*, at 1137–1138. They worked varying hours, and had "agreed on a fixed salary for varying hours." *Id.*, at 1138. The Fifth Circuit Court of Appeals found that, because the employees had agreed upon a fixed salary for varying hours, the "correct method" for calculating their regular rate was to divide "the actual hours worked each workweek into the fixed salary." *Id.*, at 1138–1139. Here, by contrast, Plaintiffs have not been misclassified as exempt. Furthermore, the Court has already found that Plaintiffs were not paid a fixed salary, and that there was no "clear mutual understanding" that they were being paid a fixed salary. For these reasons, the Court does not rely on *Blackmon* here. Nonetheless, the Court notes that *Blackmon* is consistent with *Singer* and *Yourman*, which direct the court to determine the number of hours per week that an employee's salary was "intended to compensate" by examining what happened under the employment contract.

Defendant here informed Plaintiffs that it was paying them under the FWW method by distributing a memorandum describing the FWW method to them as a separate document and as part of their Employee Handbook. As the Court has already found, Defendant's use of the FWW method violated the FLSA's requirements of a fixed salary and "clear mutual understanding." Nonetheless, because Defendant informed Plaintiffs that it was paying them under the FWW method, Plaintiffs were on notice that their non-overtime compensation did not correspond to a 40 hour work week. Furthermore, Plaintiffs' hours varied from

week to week, and frequently did not correspond to a 40 hour work week. These circumstances show that Plaintiffs' non-overtime compensation was intended to compensate the number of actual hours worked during the work week, not a 40 hour work week. In accordance with the approach in *Singer* and *Yourman*, the Court finds that unpaid overtime compensation must be calculated based on a regular hourly rate with the number of actual hours worked in the denominator.

Accordingly, Plaintiffs' Motion for Summary Judgment (**Instrument No. 130**) is **DENIED** and Defendant's Motion for Summary Judgment (**Instrument No. 133**) is **GRANTED** with respect to the number of hours used to calculate the regular hourly rate.

### C.

■■■ The Parties also dispute whether Defendant owes liquidated damages. Under the FLSA, an employer is not liable for liquidated damages if its actions were "in good faith and [it] had reasonable grounds for believing its act or omission was not a violation of the Fair Labor Standards Act." 29 U.S.C. § 260. The employer "faces a 'substantial burden' of establishing good faith and a reasonable belief that its actions did not violate the FLSA." *Singer,* 324 F.3d at 823 (citing *Bernard v. IBP, Inc. of Nebraska,* 154 F.3d 259, 267 (5th Cir.1998)). Good faith is a subjective component under which the employer must show that it "had an honest intention to ascertain what the Act requires and to act in accordance with it." *Dybach v. State of Fla. Dept. of Corrections,* 942 F.2d 1562, 1566 (11th Cir.1991) (internal citations omitted). "[G]ood faith requires some duty to investigate potential liability under the FLSA." *Barcellona v. Tiffany English Pub, Inc.,* 597 F.2d 464, 468–469 (5th Cir.1979). Furthermore, good faith requires that an employer take "active steps" to ascertain and comply with

the FLSA. *Reich v. Southern New England Telecommunications Corp.,* 121 F.3d 58, 71 (2d Cir.1997). However, reasonableness is an objective component. *Yourman,* 865 F.Supp. at 162. An employer may not rely on ignorance alone as reasonable grounds for believing that it did not violate the FLSA. *Barcellona,* 597 F.2d at 468–469. However, the ambiguity of the regulation and the closeness of the question may also be considered by courts in determining whether to impose liquidated damages. *Brock v. Claridge Hotel and Casino,* 846 F.2d 180 (3d Cir.1988).

■■■ Here, the Court found that Defendant violated the FWW's fixed salary requirement by paying Plaintiffs premiums for off-shore, holiday, and day-off work assignments. The Court also found that the salary deductions imposed by Defendant's policy for sick and vacation leave made it impossible for Defendant to meet the FWW's "clear mutual understanding" requirement regarding fixed salary.

The Court first considers whether Defendant's violation of the fixed salary requirement was made in good faith and on reasonable grounds. In January of 2008, the United States Department of Labor ("DOL") acknowledged that the issue of whether premium payments violated FWW requirements was ambiguous in the regulations and a close question. In its proposed rules, dated January 2008, 73 Fed.Reg. 145, p. 43662, the DOL stated:

> The payment of additional bonus supplements and premium payments to employees compensated under the fluctuating workweek method has presented challenges to both employers and the courts in applying the current regulations ... [t]he proposed regulation provides that bona fide bonus or premium payments do not invalidate the fluctuating workweek method of compensation.

73 Fed.Reg. 145, p. 43662. This proposed regulation was never adopted, and on April 5, 2011, the DOL stated that it "now believes that the proposed regulation would have been inconsistent with the requirement of a fixed salary payment." 79 Fed. Reg. 65, p. 18850. Thus, although it is now clear that an employer that pays salary premiums may not apply the FWW, at the time that Defendant was paying Plaintiffs, it was not clear that salary premiums were inconsistent with the FWW requirements. Furthermore, the United States DOL and the New Jersey DOL audited Defendant several times between 2000 and 2009. (Instrument No. 131–21). Each time, the auditors either found that Defendant's payment of salary premiums either did not violate the FWW requirements, or that Defendant was required to include the salary premiums in the regular hourly rate which was used to calculate the overtime rate. (Instrument No. 131–21).

In *Adeva*, as in the instant case, the court found that the employer had violated the fixed salary requirement for the FWW method by paying salary premiums to oil, gas and chemical inspectors. *Adeva*, 2010 WL 97991 at *3. Nonetheless, the court did not award liquidated damages because of the ambiguity in the law shown by the DOL's proposed regulation, because the New Jersey DOL had conducted an audit of the employer's pay practices but did not challenge the employer's application of the FWW, and because the employer had its conduct approved by outside counsel. *Adeva*, 2010 WL 97991 at *3. The court furthermore found that "it appears that at the time Defendants implemented its FWW methodology, over 25 years ago, it was in full compliance with the limited existing authority." *Adeva*, 2010 WL 97991 at *3.

Here, as in *Adeva*, Defendant paid Plaintiffs under the FWW method during several years in which it was ambiguous whether salary premiums were consistent with the fixed salary requirement for the FWW, and in which it appeared that Defendant's salary premiums were "in full compliance with the limited existing authority." Furthermore, while the employer in *Adeva* was audited once by the New Jersey DOL, Defendant here was audited several times, by the United States DOL as well as the New Jersey DOL. Plaintiff argues that these audits are "meaningless" because Defendant did not submit documents to the auditors showing its impermissible deductions for sick and vacation leave. However, although the audits did not address the issue of Defendant's salary deductions, they did address Defendant's practice of paying salary premiums to employees. Because they did not result in any findings that the salary premiums precluded Defendant's use of the FWW, they are evidence that Defendant had reasonable grounds for believing that its payment of salary premiums was valid under the FLSA.

Nonetheless, *Adeva* does not apply here. The employer in *Adeva* had its conduct approved by outside counsel. Here, by contrast, the record does not show whether Defendant consulted an attorney, and Defendant has not asserted that its pay practices were approved by an attorney. (*See* Instrument No. 131–2, at 11). In fact, Defendant has not identified any "active steps" that it took in good faith to ascertain and comply with the FLSA. *See Reich*, 121 F.3d 58 at 71. Although the uncertainty in the law and DOL audits are evidence of reasonable grounds for Defendant's belief that its salary premiums did not violate the FLSA, Plaintiffs are entitled to liquidated damages because Defendant has not identified any "active steps" that would meet the "substantial burden" of showing good faith.

Furthermore, Defendant has also failed to meet its "substantial burden" of show-

ing good faith and reasonable grounds for its belief that it was complying with the FLSA with respect to Defendant's violation of the FWW requirement that there be a "clear mutual understanding" regarding fixed salary. The Court previously found that Defendant's deductions for sick and vacation leave prevented it from meeting the requirement that there be a "clear mutual understanding" regarding fixed salary. However, there is no evidence that the issue of whether these deductions were permissible was ambiguous in the regulations or a close question. To the contrary, the DOL issued opinion letters in 1999 and 2006 stating that employers using the FWW were not permitted to deduct sick and vacation leave from employees' salaries. *See Hunter,* 453 F.Supp.2d at 60–61 (citing Op. Letter of the Wage & Hour Div., 1999 WL 1002415 (May 28, 1999); Op. Letter of the Wage & Hour Div., 1999 WL 1002399 (May 10, 1999); Op. Letter of the Wage & Hour Div., 2006 WL 1488849 (May 12, 2006)). Furthermore, the audits conducted by the United States and New Jersey DOLs are "meaningless" with respect to the issue of whether Defendant's deductions for sick and vacation leave were permissible. Defendant has not provided any evidence showing that auditors were informed of Defendant's policies for sick and vacation leave, or that the audits made any findings regarding Defendant's policies for sick and vacation leave. Finally, Defendant has also failed to identify any "active steps" that it took to ascertain and comply with the FLSA regarding its sick and vacation leave policies. Accordingly, Defendant has failed to meet its "substantial burden" of showing that its violation of the FWW's "clear mutual understanding" requirement was made in good faith and on reasonable grounds.

Because Defendant has failed to meet its "substantial burden" of showing that its violations of the FLSA's FWW requirements were made in good faith and on reasonable grounds, Plaintiffs are entitled to liquidated damages. Plaintiff's Motion for Summary Judgment is **GRANTED (Instrument No. 130)** and Defendant's Motion for Summary Judgment is **DENIED (Instrument No. 133)** with respect to Plaintiffs' request for liquidated damages.

### D.

Finally, the Parties dispute whether the statute of limitations here is two years or three years. An action to recover unpaid overtime compensation

> may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the caused of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued . . . .

29 U.S.C. § 255(a). The longer three-year period applies if Defendants willfully violated the FLSA, i.e., Defendants "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 133, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988); *Reich v. Bay, Inc.,* 23 F.3d 110, 117 (5th Cir.1994). Plaintiffs have the burden of establishing willful conduct by the Defendants. *Cox v. Brookshire Grocery Co.,* 919 F.2d 354, 356 (5th Cir.1990).

Plaintiffs argue that the facts here are similar to those in *Alvarez v. IBP, Inc.,* 339 F.3d 894, 908–909 (9th Cir.2003) and *Herman v. RSR Sec. Servs. Ltd.,* 172 F.3d 132, 141–42 (2d Cir.1999), in which the courts found that the three-year statute of limitations applied. In *Alvarez,* the employer was a meat processing company involved in "long-running litigation" dis-

putes with the DOL regarding its payment practices. In finding that the three-year statute of limitations applied, the court noted that the employer was "on notice" of its FLSA requirements and characterized the employer's actions as "attempts to evade compliance, or to minimize the actions necessary to achieve compliance." *Alvarez,* at 909. In *Herman,* the court found that the employer was reckless to rely on information from certain individuals because the employer already knew that they had engaged in prior illegal activities, and was aware that some of their current activities were illegal. *Herman,* at 142.

Defendant's activities here pale in comparison to those in *Alvarez* and *Herman.* Plaintiffs have not shown that Defendant was "on notice" of the illegality of its payment practices due to "long-running litigation" with the DOL. To the contrary, Defendant's payment of salary premiums was addressed by the DOL in its audits, and did not result in any findings that the premiums precluded application of the FWW. Plaintiff has also not shown that Defendant was "on notice" regarding the legality of its deduction policies, because these policies were not addressed in the audits. As evidence of evasive or minimal compliance behavior, Plaintiffs point to evidence showing that Defendant did not provide its Employee Handbook to DOL auditors, and provided few timesheets for auditors to review. (*See* Instrument No. 131–5, at 6–7; Instrument No. 131–22). However, Plaintiffs have not pointed to any evidence showing that auditors asked for information that they did not receive. To the contrary, Hill testified that in an audit where she had provided only three sample timesheets to the auditor, she did not recall the auditor asking her to provide any further samples. (Instrument No. 131–5, at 6). Finally, Plaintiffs have also not shown that Defendant recklessly relied on information from individuals that it knew had engaged in illegal activities. Accordingly, Plaintiffs have failed to carry their burden of establishing willful conduct by the Defendant.

The Court finds that the two-year statute of limitations applies here. Defendant's Motion for Summary Judgment is **GRANTED (Instrument No. 133)** with respect to the statute of limitations.

### V.

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is **GRANTED in part and DENIED in part. (Instrument No. 130).** Defendant's Motion for Summary Judgment is **GRANTED in part and DENIED in part. (Instrument No. 133).** The Court finds in favor of Plaintiffs on their claim that Defendant violated the FLSA's requirements for applying the FWW method, and on their entitlement to liquidated damages. The Court finds in favor of Defendant on how to calculate the regular hourly rate for damages, and on the applicability of the 2 year statute of limitations. Plaintiff's Motion to Strike is **DENIED as moot. (Instrument No. 139).**

The Clerk shall enter this ORDER and provide a copy to all parties.