# United States Court of Appeals
## For the First Circuit

No. 12-1559

A.G., BY AND THROUGH HIS MOTHER AND NEXT FRIEND,
SHERRI MADDOX, AND K.S., BY AND THROUGH HIS MOTHER
AND NEXT FRIEND, FELICIA CLARK,

Plaintiffs, Appellants,

v.

ELSEVIER, INC., THE BOND CLINIC, HENRY LERNER, M.D.,
AND EVA SALAMON, M.D.,

Defendants, Appellees,

AMERICAN JOURNAL OF OBSTETRICS & GYNECOLOGY,

Defendant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
[Hon. Nathaniel M. Gorton, U.S. District Judge]

Before
Thompson, Selya and Lipez,
Circuit Judges.

Kenneth M. Levine, with whom Sheila E. Mone and Kenneth M. Levine & Associates LLC were on brief, for appellants.
William S. Strong, with whom Kotin, Crabtree & Strong, LLP was on brief, for appellee Elsevier, Inc.
Douglas A. Robertson, with whom Charles P. Reidy, III and Martin, Magnuson, McCarthy & Kenney were on brief, for appellee Lerner.
Chad P. Brouillard, with whom Joan Eldridge and Foster & Eldridge, LLP were on brief, for remaining appellees.

October 16, 2013

**SELYA, Circuit Judge.** This is a curious case in which the plaintiffs, unsuccessful medical malpractice suitors, seek damages against the authors and publisher of a case report, introduced into evidence in the malpractice trials, that appeared in a peer-reviewed obstetrical journal. Acting on the defendants' motions to dismiss, see Fed. R. Civ. P. 12(b)(6), the district court concluded that the plaintiffs' complaint stumbled on the plausibility threshold. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007). Accordingly, the court dismissed the complaint for failure to state a claim upon which relief could be granted. See Gorbey ex rel. Maddox v. Am. Journal of Ob. & Gyn., 849 F. Supp. 2d 162, 165-66 (D. Mass. 2012).

The plaintiffs' theory of the case is imaginative but unpersuasive. Starting with the premise that the case report was false, they allege that the falsity "caused" the juries in the malpractice trials to find against them. This optimistic allegation overlooks that, for aught that appears, causation is unprovable here and, thus, the causation allegation is wholly speculative. Consequently, the plaintiffs' claim does not reach the plateau of plausibility which, under Iqbal and Twombly, is the new normal in federal civil procedure. We therefore affirm.

## I. BACKGROUND

We briefly rehearse the background of the case, reserving some details for our later discussion of the merits. Because this appeal follows the granting of motions to dismiss, we take as true the facts presented in the complaint. See Rodríguez-Reyes v. Molina-Rodríguez, 711 F.3d 49, 51 (1st Cir. 2013).

Plaintiffs A.G. and K.S., appellants here, were born with permanent brachial plexus injuries.[1] Births involving shoulder dystocia — a phenomenon in which a fetus's shoulder becomes stuck after delivery of the head — present significant risks to the infant, including asphyxiation. To deliver a baby safely following the incidence of shoulder dystocia, an obstetrician has several options. Prominent among these options is traction, which can be used to pull the infant out of the birth canal. But this pulling potentially can damage the brachial plexus (a network of nerve fibers running to the shoulder, arm, and hand). Injuries to this network can seriously impair function and sensation in the arm. See generally The Merck Manual 1802, 2679-80, 2770-71 (Robert S.

---

[1] The plaintiffs originally sued using their full names, and their malpractice cases and the district court proceedings were litigated on that basis. On appeal, however, a duty judge granted the plaintiffs' motion to redact the caption of the case and use initials instead of names. See Fed. R. App. P. 25(a)(5). Although this seems to be a classic example of closing the barn door after the horse has galloped away — the records in the state courts and in the district court are not sealed and at least two opinions have already been published using the plaintiffs' full names — we have employed the redacted case caption.

-3-

Porter et al. eds., 19th ed. 2011) (describing shoulder dystocia and brachial plexus injuries).

The plaintiffs, minors suing through their mothers and next friends, alleged in separate medical malpractice actions that their brachial plexus injuries were caused by the application of excessive traction during delivery. A.G.'s action, brought in Virginia, ended in a take-nothing verdict, which he did not appeal. K.S.'s action, brought in Illinois, likewise ended in a take-nothing verdict, which he unsuccessfully appealed. See Stapleton ex rel. Clark v. Moore, 932 N.E.2d 487 (Ill. App. Ct. 2010).

At both trials, the defense introduced into evidence a case report entitled "Permanent Brachial Plexus Injury Following Vaginal Delivery Without Physician Traction or Shoulder Dystocia" (the Case Report). The Case Report, co-authored by Drs. Henry Lerner and Eva Salamon and published in the American Journal of Obstetrics and Gynecology, purports to document an instance of brachial plexus injury occurring in a delivery performed by Dr. Salamon. The Case Report portrays the delivery as unaccompanied by either shoulder dystocia or physician-applied traction. See Henry M. Lerner & Eva Salamon, Permanent Brachial Plexus Injury Following Vaginal Delivery Without Physician Traction or Shoulder Dystocia, Am. J. of Obstetrics & Gynecology, Mar. 2008, at e7.

Unwilling to let the matter rest after losing their malpractice cases, the plaintiffs joined forces and sued Dr.

Lerner, Dr. Salamon, Dr. Salamon's employer, the journal, and the publisher in the United States District Court for the District of Massachusetts. Their complaint asserted a cause of action under chapter 93A, section 9, of the Massachusetts General Laws, contending that the Case Report was false because the described delivery actually included both shoulder dystocia and the application of traction. They further alleged that the defendants engaged in fraudulent conduct by publishing the false Case Report and later refusing to retract it. To show harm sufficient to support their claim for damages, the plaintiffs averred that the Case Report had tipped the balance in their state-court malpractice trials.

All of the defendants moved to dismiss. The district court granted their motions, concluding that the plaintiffs had failed to allege any "facts from which the Court could reasonably infer that the [Case Report] was material to the juries' verdicts." Gorbey, 849 F. Supp. 2d at 165. This timely appeal followed.

## II. ANALYSIS

We review de novo a district court's dismissal of a complaint for failure to state a claim. Santiago v. Puerto Rico, 655 F.3d 61, 72 (1st Cir. 2011). In our assessment, "we accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences therefrom in the pleader's favor." Id. "We may augment these facts and inferences with data points gleaned

from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011).

The focal point of our analysis in this case is the requirement that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A mechanistic recital of the elements of a claim will not suffice: the complaint must contain "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.

Conducting a plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679. For a claim to withstand a motion to dismiss, it need not show that recovery is probable, but it must show "more than a sheer possibility" of liability. Id. at 678.

The plausibility standard invites a two-step pavane. Grajales v. P.R. Ports Auth., 682 F.3d 40, 45 (1st Cir. 2012). At the first step, the court "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012). At the second step, the court must determine whether the remaining factual content allows a "reasonable inference that the defendant is liable

for the misconduct alleged." Id. (internal quotation marks omitted).

Consistent with the foregoing, the plaintiffs in this chapter 93A case were required to proffer a complaint plausibly alleging that the defendants' deceptive acts caused them injury or loss. See Rhodes v. AIG Dom. Claims, Inc., 961 N.E.2d 1067, 1076 (Mass. 2012); Hershenow v. Enter. Rent-A-Car Co., 840 N.E.2d 526, 532 (Mass. 2006). The court below zeroed in on the weakest link in the plaintiffs' chain of allegations — causation — and concluded that their complaint failed plausibly to state a viable claim. Gorbey, 849 F. Supp. 2d at 165-66. We test this conclusion.

The complaint's bald assertion that "[b]ut for" the Case Report the plaintiffs "would have been successful" at the malpractice trials is exactly the type of conclusory statement that need not be credited at the Rule 12(b)(6) stage. See Iqbal, 556 U.S. at 678. Here, moreover, that conclusory statement is presented as an ipse dixit, unadorned by any factual assertions that might lend it plausibility. So viewed, the complaint stumbles on the plausibility threshold. See, e.g., Shay v. Walters, 702 F.3d 76, 82-83 (1st Cir. 2012).

The plaintiffs resist this assessment. They contend that merely by alleging that the Case Report caused their losses they have raised a factbound question on which discovery must be allowed. This contention elevates hope over reason: the

plausibility standard demands that a party do more than suggest in conclusory terms the existence of questions of fact about the elements of a claim.  Thus, in Iqbal, 556 U.S. at 680-81, the Court — faced with a comparably opaque allegation — declined to find plausibility and refused to allow discovery to address whether the defendants, as conclusorily alleged, were willfully responsible for racial discrimination against the plaintiff.

Case law in this circuit is transparently clear as to this aspect of the plausibility standard.  See, e.g., Pruell v. Caritas Christi, 678 F.3d 10, 13 (1st Cir. 2012); Peñalbert-Rosa v. Fortuño-Burset, 631 F.3d 592, 595 (1st Cir. 2011).  We follow this unbroken line of cases and hold that the rote recital of the elements of a cause of action is not enough, by itself, to nudge a case past the plausibility threshold.

This remains true even where, as here, plaintiffs attempt to camouflage conclusory statements as allegations of fact.  When allegations, though disguised as factual, are so threadbare that they omit any meaningful factual content, we will treat them as what they are: naked conclusions.  See Iqbal, 556 U.S. at 678; Peñalbert-Rosa, 631 F.3d at 595; see also Artuso v. Vertex Pharm., Inc., 637 F.3d 1, 9 (1st Cir. 2011) (explaining that even though an averment may be couched as a factual allegation, it can be "so subjective that it fails to cross 'the line between the conclusory and the factual'" (quoting Twombly, 550 U.S. at 557 n.5)).

-8-

In this instance, the paucity of factual content bearing on causation is made painfully apparent by a comparison between the complaint's allegations of fraudulent conduct and its allegation of causation. Even after stripping away the conclusory statement that the defendants' actions constituted "unfair or deceptive acts or practices," the complaint contains raw facts tending to support the claim of fraud. It says, for example, that Dr. Lerner never read the labor and delivery notes before helping to author the Case Report; that the hospital records reflected that the box for shoulder dystocia had been checked but then crossed out; and that Dr. Salamon had stated under oath that she applied traction in <u>all</u> deliveries. These raw facts, taken together, indicate that the plaintiffs have more than a gambler's chance of proving fraud.

In stark contrast, the allegation of causation is unembellished by any supporting facts. Once the conclusory statement regarding causation is stripped out of the complaint, the only relevant factual allegation is that the Case Report was "introduced, used, and relied upon" by defense counsel at both medical malpractice trials. This solitary fact provides no basis for a rational inference that the Case Report was critical to the juries' verdicts; that inference depends entirely upon speculation and surmise.

Nor does the complaint (or anything else in the record, for that matter) suggest a feasible way as to how discovery might

help to develop the missing patina of facts. This is crucial because the Twombly Court required, as a hallmark of plausibility, that the complaint contain "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence." Twombly, 550 U.S. at 556. Here, this hallmark is utterly absent.

In a hapless effort to blunt the force of this reasoning, the plaintiffs asseverate that the plausibility standard applies only to allegations of wrongful conduct and not to allegations of causation. This asseveration is simply wrong.

As an initial matter, this court frequently has affirmed dismissals of complaints premised on the absence of plausible allegations unrelated to wrongful conduct. See, e.g., Mead v. Independence Ass'n, 684 F.3d 226, 231-32 (1st Cir. 2012); Harron v. Town of Franklin, 660 F.3d 531, 537 (1st Cir. 2011); Martino v. Forward Air, Inc., 609 F.3d 1, 4-5 (1st Cir. 2010); Uphoff Figueroa v. Alejandro, 597 F.3d 423, 431 (1st Cir. 2010). Indeed, we have upheld at least one dismissal for failure to state a claim due to a lack of any plausible allegation of causation.[2] See Portugués-Santana v. Rekomdiv Int'l, Inc., 725 F.3d 17, 27 (1st Cir. 2013); see also Rodríguez-Ramos v. Hernández-Gregorat, 685 F.3d 34, 43

---

[2] We are not alone. Our sister circuits have held with a regularity bordering on the echolalic that the plausibility standard applies with undiminished force to allegations of causation. See, e.g., In re Terrorist Attacks on September 11, 2011, 714 F.3d 118, 127 (2d Cir. 2013); In re NM Holdings Co., 622 F.3d 613, 618-25 (6th Cir. 2010); Zutz v. Nelson, 601 F.3d 842, 851-52 (8th Cir. 2010).

(1st Cir. 2012) (considering whether causation allegation "passes muster under Iqbal").

In all events, there is a larger picture: it is neither necessary nor desirable to balkanize the plausibility standard element by element.[3]  To pass through the plausibility screen, a complaint does not have to evince a "one-to-one relationship between any single allegation and a necessary element of the cause of action."  Rodríguez-Reyes, 711 F.3d at 55.  Rather, the plausibility standard should be applied to the claim as a whole. See id.  The critical question is whether the claim, viewed holistically, is made plausible by "the cumulative effect of the factual allegations" contained in the complaint.  Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 14 (1st Cir. 2011).

This holistic approach is compatible with Rule 8(a)(2), which is the font from which the plausibility standard springs. That rule speaks only in terms of "the claim," making no particular distinction among elements.

The complaint before us cannot survive such an inquiry. The superficiality of the causation allegation, coupled with the

---

[3] Of course, different pleading rules may apply to certain elements of certain claims, which must satisfy a heightened pleading standard.  See, e.g., Fed. R. Civ. P. 9(b) (requiring "particularity" for pleading circumstances of fraud or mistake). The case at hand does not require us to investigate the interaction between the plausibility standard and these special rules.

-11-

speculative nature of the claim as a whole, makes manifest that the plaintiffs have failed to plead a plausible cause of action.

The plaintiffs have a fallback position.  They argue that their claim is not inherently speculative because the causation question here (that is, how the original juries would have decided the malpractice suits in the absence of the Case Report) is no more impervious to proof than the causation question in a garden-variety legal malpractice case.  In explanation, the plaintiffs say that, in that type of case, the claimant needs to show that she would have prevailed at a prior trial in the absence of her attorney's negligence; yet, courts typically allow the jury to engage in the counterfactual analysis of how the trial would have ended under different circumstances.  See, e.g., Fishman v. Brooks, 487 N.E.2d 1377, 1380 (Mass. 1986).

This analogy is unconvincing: even in the legal malpractice context, a complaint may be dismissed if the allegations of causation depend solely on conclusory statements.[4] Thus, in Portugués-Santana, we had no difficulty concluding that the complaint "fail[ed] to establish the causation element necessary to make out a plausible legal malpractice claim."  725 F.3d at 27.  While the complaint there explicitly alleged that the

---

[4] This is so regardless of whether the rule in Massachusetts is that causation in a legal malpractice case "must be decided on an objective basis."  Glenn v. Aiken, 569 N.E.2d 783, 786 (Mass. 1991).  Whether from an objective or a subjective standpoint, the buck-naked allegation of causation proffered here is insufficient.

-12-

defendant's "acts and omissions . . . were the proximate cause of the damages suffered," this conclusory statement was held to be wholly unsupported by factual allegations sufficient to make the plaintiff's claim plausible. See id. at 26-27. The same is true here.

We add a coda. The plaintiffs lament that if we affirm the dismissal of this suit, defendants in future medical malpractice actions will be able to rely with impunity on the fraudulently contrived Case Report. But this gaudy rhetoric distorts the reality of events. The Daubert doctrine presents an appropriate opportunity to raise, in a pretrial setting, concerns about the Case Report. See Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993); see also 29A Am. Jur. 2d Evidence § 1014 (2013) (describing similar doctrines in state courts).

## III. CONCLUSION

We need go no further.[5] Consistent with the teachings of Iqbal, 556 U.S. at 679, the court below drew sagaciously "on its judicial experience and common sense" to identify an incurable infirmity in the plaintiffs' complaint. The judgment of dismissal is, therefore,

**Affirmed.**

---

[5] Because the plausibility standard offers an unimpugnable basis for upholding the order of dismissal, we do not address any of the defendants' alternative grounds for affirmance.

-13-