# United States Court of Appeals
## For the First Circuit

No. 13-1222

LINDA M. RUIVO,

Plaintiff, Appellant,

v.

WELLS FARGO BANK, N.A., a/k/a WACHOVIA MORTGAGE, DIVISION OF
WELLS FARGO BANK, N.A., f/k/a WACHOVIA MORTGAGE,
FSB, f/k/a WORLD SAVINGS BANK, FSB,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Paul J. Barbadoro, U.S. District Judge]

Before

Howard, Stahl and Lipez
Circuit Judges.

David H. Bownes, with whom Law Office of David H. Bownes, P.C.
was on brief, for appellant.
David M. Bizar, with whom Kiran A. Seldon and Seyfarth Shaw
LLP were on brief, for appellee.

September 8, 2014

**LIPEZ, Circuit Judge**.  Linda Ruivo appeals the district court's dismissal of counts one and five of her First Amended Complaint.  Ruivo argues that count one, captioned "N.H.R.S.A. 397-A:2(VI)," adequately pleaded a state common law claim of fraud, and that count five sufficiently pleaded, consistent with its caption, a promissory estoppel claim.  Agreeing with the district court that both claims were inadequately pleaded, we affirm the district court's dismissal.

## I.

In reviewing the grant of a motion to dismiss, we recount the facts as alleged in the operative complaint.  Grajales v. P.R. Ports Auth., 682 F.3d 40, 43 (1st Cir. 2012).  Here the pertinent complaint is the First Amended Complaint.

In July of 2007, Ruivo's property, consisting of a primary residence and cottage in Moultonborough, New Hampshire, was subject to a $500,000 mortgage.  In the fall of 2007, Ruivo had begun to consider refinancing her mortgage.  To that end, during the late winter and early spring of 2008, she discussed refinancing with Wachovia Mortgage, FSB, a predecessor in interest to defendant-appellee Wells Fargo Bank, N.A. (hereinafter "Wells Fargo") and Scott Farah, a mortgage broker at Financial Resources Mortgage, Inc.[1]  Based on those discussions, she believed that

---

[1] In her complaint, Ruivo refers to both Scott Farah and his firm, Financial Resources Mortgage, Inc., as "agents" of Wells Fargo.

refinancing her property on more favorable terms was possible, but that she needed to make some improvements to her property to increase its appraised value. Hence, before refinancing, she began to make improvements on her property, drawing on various lines of credit. Ruivo then applied to Wachovia for a thirty-year fixed interest rate mortgage with cash out. In June of 2008, Farah informed her that she had been approved for a loan.

At the July 11, 2008[2] closing for the refinancing, without prior notice, the terms of the refinancing were unfavorably changed to an interest-only loan with an interest rate increasing every six months. Farah, who was present as the Mortgage Advisor at the closing for the refinancing, advised Ruivo that there were no other options but to sign. Faced with the large debt from her property improvements, Ruivo moved forward with the refinancing. Farah nonetheless assured Ruivo that further refinancing at a later date was "a realistic option." In subsequent discussions, he "continued to assure her more favorable terms would be forthcoming." She represents that at that time she had no reason to distrust Farah.

In November of 2009, after the demise of Financial Resources Mortgage, Inc., Ruivo realized she would be unable to

_____

[2] In her complaint, Ruivo also refers to the closing date as June 11, 2008. We treat that reference as a typographical error as her timeline is consistent with a July closing date, and she uses the July date in her brief on appeal.

refinance her mortgage through conventional sources. Finding it difficult to maintain her mortgage payments, she explored the possibility of a loan modification pursuant to the American Recovery and Reinvestment Act of 2009. On the advice of Joseph Lamour, a loan modification consultant affiliated with Wells Fargo, she applied for three different loan modifications. Ruivo was informed verbally in February of 2011 that a loan modification pursuant to the Home Affordable Modification Program ("HAMP") had been approved.[3] However, shortly after this notice of approval, Lamour informed Ruivo by telephone that the modification ultimately had been denied because the mortgage had a negative net present value caused by the extraction of too much equity from the property.

## II.

Ruivo subsequently brought suit against Wells Fargo, alleging, inter alia, a violation of N.H. Rev. Stat. Ann. § 397-A:2(VI) in count one of her complaint and a promissory estoppel claim in count five. Wells Fargo moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6).

In response to the motion, the district court found that Ruivo claimed in count one that Wells Fargo was liable under a New

---

[3] HAMP is a "a federal initiative that incentivizes lenders and loan servicers to offer loan modifications to eligible homeowners." Young v. Wells Fargo Bank, N.A., 717 F.3d 224, 228 (1st Cir. 2013).

Hampshire statute that authorized the New Hampshire Banking Department to regulate mortgage bankers and mortgage brokers, but did not expressly authorize enforcement actions by private parties. See N.H. Rev. Stat. Ann. § 397-A:2(VI). Citing New Hampshire precedent, the court concluded that Ruivo was not entitled to invoke that statute unless she could demonstrate that the legislature intended to authorize a private party's suit by implication. The court then dismissed the claim, concluding that Ruivo had failed to present a credible argument to support a private right of action under the statute. In a footnote, the court further stated, "I also reject Ruivo's eleventh-hour attempt to convert her statutory claim into a common law fraud claim. A litigant may not amend a complaint in an objection to a motion to dismiss." Ruivo v. Wells Fargo Bank, N.A., No. 11-cv-466-PB, 2012 WL 5845452, at *2 n.4 (D.N.H. Nov. 19, 2012).

With respect to count five of Ruivo's complaint, the district court explained that under the law of promissory estoppel, "'a promise reasonably understood as intended to induce action is enforceable by one who relies on it to his detriment or to the benefit of the promisor.'" Id. at *5 (quoting Panto v. Moore Bus. Forms, Inc., 547 A.2d 260, 266 (N.H. 1988) (Souter, J.)). The court then dismissed the claim, finding that Ruivo "fail[ed] to plausibly allege a claim either that she relied on the promise to

her detriment or that Wells Fargo benefitted in some way from making the promise." Id.

## III.

We review de novo the grant of a motion to dismiss under Rule 12(b)(6). Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 7 (1st Cir. 2011). We examine whether the operative complaint states a claim for which relief can be granted, construing the well-pleaded facts in the light most favorable to the plaintiff, id., accepting their truth and drawing all reasonable inferences in plaintiff's favor, Grajales, 682 F.3d at 44.

In resolving a motion to dismiss, we "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013) (internal quotation marks omitted). We then "determine whether the remaining factual content allows a reasonable inference that the defendant is liable for the misconduct alleged." Id. (internal quotation marks omitted).

This is not to say, however, that legal allegations serve no purpose and go unscrutinized. Under Federal Rule of Civil Procedure 8(a)(2), the plaintiff has a "'responsibility for identifying the nature of her claim.'" Thomas v. Rhode Island, 542 F.3d 944, 949 (1st Cir. 2008) (quoting Calvi v. Knox Cnty., 470 F.3d 422, 430 (1st Cir. 2006)). On appeal of a dismissal ruling

that a legal claim was unpleaded, we review de novo whether "the generality of the complaint's language did not afford defendants [advance] notice with respect to the [nature of that particular legal] claim."  Thomas, 542 F.3d at 949.

### A.  Fraud

On appeal, Ruivo concedes that she cannot claim a private right of action under N.H. Rev. Stat. Ann. § 397-A:2(VI).  Instead, she insists, as she did at oral argument before the district court, that she has stated a claim for common law fraud.[4]  Wells Fargo argues that there is no reference to any such fraud claim in the complaint, and therefore Ruivo is not entitled to pursue it.

The relevant allegations of the complaint fall under the section with the heading:  "COUNT I N.H.R.S.A. 397-A:2(VI)."  The allegations following that heading describe the actions of Wells Fargo and its agents that Ruivo felt violated the statute.  Among other things, Ruivo alleged that "[t]he defendants' agents . . . employed a device[,] scheme and artifice to deceive and defraud the plaintiff into entering into and agreeing to the Closing documents," and further alleged that "it was not until November of

---

[4] Ruivo also specifically disclaims construing her objection to the motion to dismiss as an attempt to amend her complaint to add a common law claim.  Ruivo insists that the common law claim was part of her complaint from the beginning.  Thus, she does not challenge as an error of law the district court's statement that "[a] litigant may not amend a complaint in an objection to a motion to dismiss," Ruivo, 2012 WL 5845452, at *2 n.4, and we need not examine the procedural and discretionary limitations on amending a complaint in response to a motion to dismiss.

2009 . . . that the plaintiff first understood that [defendants' agents] had been engaging in a pattern of <u>fraud</u> and deceit. . . ." (Emphasis added). Those two fleeting uses of the words "defraud" and "fraud" simply borrow from the statutory language, which makes it unlawful for any mortgagee "[t]o employ any device, scheme, or artifice to defraud." N.H. Rev. Stat. Ann. § 397-A:2(VI). The complaint contains no other references to fraud and sets forth no separate count of common law fraud.

Although "'[a] complaint need not point to the appropriate statute or law in order to raise a claim for relief under Rule 8,'" <u>Morales-Vallellanes</u> v. <u>Potter</u>, 339 F.3d 9, 14 (1st Cir. 2003) (quoting <u>Tolle</u> v. <u>Carroll Touch, Inc.</u>, 977 F.2d 1129, 1134 (7th Cir. 1992)), its "substance and structure" must give the defendants notice of the nature of the claim against them, <u>Cortés-Rivera</u> v. <u>Department of Corrections & Rehabilitation</u>, 626 F.3d 21, 28-29 (1st Cir. 2010). The court, and the defendants, are entitled to rely on the plain language and the structure of the complaint in determining what claims are present there. <u>See</u> <u>id.</u> at 28. To be sure, a plaintiff need not divide her complaint into specifically labeled subsections, one for each count. However, when, as here, a plaintiff chooses to do just that, her claims are confined by the "internal logic present in . . . the complaint." <u>Id.</u>

In light of the explicit invocation of a statutory claim in the relevant heading of the complaint, and her use of language in the complaint essentially tracking the statute invoked, there is nothing in the complaint that would provide Wells Fargo with adequate notice of a potential common law fraud claim. All indications pointed to a statutory claim only. See Thomas, 542 F.3d at 949 (affirming a dismissal because "[t]he vague references in the complaint to acts of the defendants that 'are illegal' and 'without lawful authority' were insufficient to apprise defendants that the appellants were asserting a more particular claim that there was a lack of probable cause for the arrests"); see also Cortés-Rivera, 626 F.3d at 28-29 (affirming the dismissal of a claim that the plaintiff pleaded in the complaint in state law terms and then attempted to reframe in federal law terms in the face of a motion for summary judgment). Here, as in those cases, the plaintiff is not entitled to pursue "every legal theory that a court may some day find lurking in the penumbra of the record." Rodriguez v. Doral Mortg. Corp., 57 F.3d 1168, 1172 (1st Cir. 1995). Accordingly, the district court properly dismissed any state law fraud claim that Ruivo belatedly attempted to advance.

## B. Promissory Estoppel

In contrast to her alleged fraud claim, Ruivo specifically enumerated a promissory estoppel claim as "Count V" in her complaint. Under New Hampshire's doctrine of promissory

estoppel, "a promise reasonably understood as intended to induce action is enforceable by one who relies upon it to his detriment or to the benefit of the promisor."  Panto, 547 A.2d at 266 (citing Restatement (Second) of Contracts § 90 (1981)); see also Rockwood v. SKF USA Inc., 687 F.3d 1, 9 (1st Cir. 2012) ("The New Hampshire Supreme Court has adopted the definition of promissory estoppel from Section 90 of the Restatement (Second) of Contracts.").

In New Hampshire, "the promissory estoppel doctrine does not simply allow the enforcement of promises 'as justice requires.'"  Rockwood v. SKF USA Inc., 758 F. Supp. 2d 44, 56 (D.N.H. 2010).  "There are other limitations on its reach," such as protecting only "'reasonable reliance' on the part of the promis[ee]" to her detriment.  Id.  at 56-57 (quoting Marbucco Corp. v. City of Manchester, 632 A.2d 522, 524 (N.H. 1993).  Thus, in order to survive a motion to dismiss, a plaintiff must plead facts that could plausibly support a finding that she reasonably relied on a promise of the defendant to her detriment.

Here, Ruivo bases her claim on the alleged promise of Wells Fargo to "consider her mortgage modification request in good faith and fair dealing."[5]  The complaint goes on to allege that she "relied on the defendants' representation by submitting her application, request[ing] documentation and subsequent information

_____

[5] We note that her promissory estoppel claim is not based on the events leading up to and including Ruivo's refinancing.  Her focus is on the subsequent attempts to modify her refinanced loan.

-10-

relating to the appraisal"[6] and, as to detriment, that she "risks losing her home and suffered additional fees and charges on her accounts and/or foreclosure/collection activity against her home."

The district court ruled that "she fails to plausibly allege a claim either that she relied on the promise to her detriment or that Wells Fargo benefitted in some way from making the promise." Ruivo, 2012 WL 5845452, at *5 (emphasis added).[7] We agree with the deficiency of her allegations on reasonable detrimental reliance. First, her complaint indicates that she was having trouble making her mortgage payments due to "economic difficulties." Only then did she need a loan modification. There is nothing to indicate that she stopped paying her mortgage or sought a loan modification because she was promised fair consideration of her application. Indeed, apparently recognizing this shortcoming, Ruivo belatedly attempts to allege, for the first time on appeal, that "she stopped paying her mortgage" in reliance on Wells Fargo's promise to fairly consider her loan modification application. The complaint, however, contains no such allegation.

Second, even if Ruivo adequately pleaded that she acted in reliance on Wells Fargo's promise to consider her loan

---

[6] An appraisal was required to establish the value of Ruivo's home for the purpose of any potential loan modification. Ruivo commissioned a second appraisal when she was not happy with the one commissioned by Wells Fargo.

[7] Ruivo does not cite "benefit of the promisor" in pursuing her promissory estoppel claim.

-11-

modification application, she failed to adequately plead how that reliance was to her detriment. The alleged promise at issue was only to "consider her mortgage modification request." (Emphasis added). Hence, Wells Fargo could have considered and denied her request without breaking its promise. Such a result would leave Ruivo in the same predicament she now faces. The "risk[] [of] losing her home" came from Ruivo's apparent inability to pay her mortgage, not any actions taken in reliance on Wells Fargo's promise. As the district court aptly put it, "[i]t is not sufficient to allege, as she has done, only that she has been harmed by losing out on the benefit of a renegotiated loan." Ruivo, 2012 WL 5845452, at *5. Accordingly, the district court correctly dismissed her promissory estoppel claim.[8]

**Affirmed.**

---

[8] Because we conclude that Ruivo failed to adequately plead reasonable detrimental reliance, we need not reach the more complicated question of whether a claim for promissory estoppel can ever be based on a mortgagee's alleged promise to consider a mortgagor for a loan modification under HAMP.

-12-