# United States Court of Appeals
## For the First Circuit

No. 15-1199

JOSEPH LALLI,

Plaintiff, Appellant,

v.

GENERAL NUTRITION CENTERS, INC.
and GENERAL NUTRITION CORP.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Michael A. Ponsor, U.S. District Judge]

Before

Kayatta, Stahl, and Barron,
Circuit Judges.

Mathew P. Jasinski, with whom William Narwold and Motley Rice LLC were on brief, for appellant.
Robert W. Pritchard, with whom Allison R. Brown and Littler Mendelson, P.C. were on brief, for appellee.

February 12, 2016

**STAHL**, **Circuit Judge**.  From August 2009 through January 2013, Plaintiff-Appellant Joseph Lalli ("Plaintiff" or "Lalli") was employed by General Nutrition Centers, Inc. and General Nutrition Corp. (collectively, "Defendants" or "GNC") as a store manager.  Lalli challenged his compensation arrangement under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, and the Massachusetts Minimum Fair Wage Law ("State Wage Law"), Mass. Gen. Laws ch. 151, §§ 1-22.  Upon GNC's motion, the district court dismissed the complaint.  Lalli now appeals that decision.  For the reasons set forth below, we affirm.

## I.  Facts & Background

The facts of the case are quite straightforward.  GNC sells health and wellness products through company-owned stores throughout the United States.  Lalli was a store manager at a GNC store in Massachusetts.  As a store manager, Lalli earned a guaranteed weekly salary regardless of the hours worked that week and a non-discretionary sales commission that varied based upon the amount of eligible sales attributed to him for that week.  Whenever Lalli worked over forty hours in a given week, he was also paid an overtime premium for each hour worked in excess of the forty hours.  In calculating Lalli's overtime, GNC used a "fluctuating workweek" ("FWW") method to calculate his overtime

- 2 -

pay rate.  Under this method, GNC would (1) add together both (a) the guaranteed salary for the week and (b) the commissions earned that week; (2) divide the total wages by the number of hours the employee logged for that week; and (3) pay an additional 50% of the resulting per hour rate for any hour worked in excess of forty hours that week.

On December 31, 2013, Lalli filed a two-count complaint alleging violations of the FLSA and the State Wage Law.  Lalli alleged that GNC's method of calculating overtime violated the statutes, arguing that the FWW calculation method lawfully applies only when a business pays a fixed amount for the week.  Because the commission earnings varied from week to week, Lalli alleged that GNC did not pay him a "fixed" amount.  One month later, GNC moved to dismiss the complaint for failure to state a claim.  The district court allowed the motion, concluding that an employer may use the FWW method to assess overtime pay rates even when an employee's weekly pay varies as a result of performance-based commissions.  Lalli then filed the instant appeal.

## II.  Analysis

The FLSA[1] requires employers to compensate employees for each hour worked in excess of forty hours during a workweek "at a rate not less than one and one-half times the regular rate at which [they are] employed."  29 U.S.C. § 207(a)(1).  "[T]he regular rate refers to the hourly rate actually paid the employee for the normal, non-overtime workweek for which he is employed."  Walling v. Youngerman-Reynolds Hardwood Co., 325 U.S. 419, 424 (1945).

If an employee is paid a fixed salary each week regardless of the hours worked, the employer calculates the "regular rate" each week by dividing the weekly wages by the hours worked that particular week.  Overnight Motor Transp. Co. v. Missel, 316 U.S. 572, 580 n.16 (1942).  "[T]hough week by week the regular rate varies with the number of hours worked," it is "regular in the statutory sense inasmuch as the rate per hour does not vary for the entire week."  Id. at 580.  The employer then multiplies the regular rate by 50% to produce the additional overtime compensation that must be paid for every hour worked beyond forty that week.  O'Brien v. Town of Agawam, 350 F.3d 279,

_____

[1] The parties agree that the FLSA and the State Wage Law requirements are essentially identical.  We see no reason to question this premise.  See Valerio v. Putnam Assocs. Inc., 173 F.3d 35, 40 (1st Cir. 1999).

- 4 -

287 (1st Cir. 2003).   Only an additional "half" is required to satisfy the statute because the "time" in "time-and-a-half" has already been compensated under the salary arrangement.[2]  Id. at 288.

All of these principles are echoed and illustrated in the interpretive bulletins issued by the Department of Labor ("DOL").   In 29 C.F.R. § 778.109, the DOL lays out the general rule for calculating overtime pay:

> The "regular rate" under the Act is a rate per hour.   The Act does not require employers to compensate employees on an hourly rate basis; their earnings may be determined on a piece-rate, salary, commission, or other basis, but in such case the overtime compensation due to employees must be computed on the basis of the hourly rate derived therefrom . . . .   The

_____

[2] "The application of the principles above stated may be illustrated by the case of an employee whose hours of work do not customarily follow a regular schedule but vary from week to week, whose total weekly hours of work never exceed 50 hours in a workweek, and whose salary of $600 a week is paid with the understanding that it constitutes the employee's compensation, except for overtime premiums, for whatever hours are worked in the workweek.   If during the course of 4 weeks this employee works 40, 37.5, 50, and 48 hours, the regular hourly rate of pay in each of these weeks is $15.00, $16.00, $12.00, and $12.50, respectively.   Since the employee has already received straight-time compensation on a salary basis for all hours worked, only additional half-time pay is due.   For the first week the employee is entitled to be paid $600; for the second week $600.00; for the third week $660 ($600 plus 10 hours at $6.00 or 40 hours at $12.00 plus 10 hours at $18.00); for the fourth week $650 ($600 plus 8 hours at $6.25, or 40 hours at $12.50 plus 8 hours at $18.75)."   29 C.F.R. § 778.114(b).

- 5 -

> regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment . . . in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid.

Section 778.109 then states that "[t]he following sections give some examples of the proper method of determining the regular rate of pay in particular instances."

Two "examples" of compliant pay structures warrant particularly close attention here. Section 778.114 describes what to do when an employee receives a "[f]ixed salary for fluctuating hours." According to the DOL, an employee may be employed on a salary basis and have hours "which fluctuate from week to week" if the salary is paid "pursuant to an understanding with his employer that he will receive such fixed amount as straight time pay for whatever hours he is called upon to work in a workweek, whether few or many." 29 C.F.R. § 778.114(a). "Where there is a clear mutual understanding . . . that the fixed salary is compensation . . . for the hours worked each workweek, whatever their number, . . . such a salary arrangement is permitted by the Act" if the resulting regular rate is sufficient to provide compensation above the minimum wage rate. Id. As in Missel, the regular rate "is determined by dividing the number of hours worked in the workweek

into the amount of the salary." Id. "Payment for overtime hours at one-half such rate in addition to the salary satisfies the overtime pay requirement because such hours have already been compensated at the straight time regular rate." Id. (emphasis added).

In O'Brien, we restated these conditions in a four-factor test:

> (1) the employee's hours must fluctuate from week to week;
>
> (2) the employee must receive a fixed salary that does not vary with the number of hours worked during the week (excluding overtime premiums);
>
> (3) the fixed amount must be sufficient to provide compensation every week at a regular rate that is at least equal to the minimum wage; and
>
> (4) the employer and employee must share a "clear mutual understanding" that the employer will pay that fixed salary regardless of the number of hours worked.

350 F.3d at 288. If the employer uses the FWW method, it must satisfy a fifth factor in order to comply with the FLSA's overtime requirement: "the employee [must] receiv[e] a fifty percent (50%) overtime premium in addition to the fixed weekly salary for all hours worked in excess of 40 during the week." See Wills v.

RadioShack Corp., 981 F. Supp. 2d 245, 255 (S.D.N.Y. 2013) (emphasis added).

Section 778.118, on the other hand, describes what to do when an employee receives a "[c]ommission paid on a workweek basis." As an adjacent section points out: "Commissions . . . must be included in the regular rate. This is true regardless of whether the commission is the sole source of the employee's compensation or is paid in addition to a guaranteed salary[.]" 29 C.F.R. § 778.117. "When the commission is paid on a weekly basis, it is added to the employee's other earnings for that workweek . . . and the total is divided by the total number of hours worked in the workweek to obtain the employee's regular hourly rate for the particular workweek." Id. § 778.118. As with the overtime premium provided under section 778.114, where an employee's compensation arrangement already accounts for the "time" in "time-and-a-half," the employee who earns a commission on a workweek basis "must then be paid extra compensation at one-half of that rate for each hour worked in excess of the applicable maximum hours standard." Id. (emphasis added).

In the instant case, Defendants employed a pay structure that combines the example set out in section 778.114 (a fixed weekly salary regardless of hours worked) with the example set out

in section 778.118 (commissions paid weekly).[3]  Because each element reflects a permissible compensation scheme, one might suspect Defendants to be on solid footing.  Instead, Plaintiff contends that two rights make a wrong, and that the commission component of the pay arrangement takes the pay scheme as a whole outside the example provided in section 778.114.  The district court rejected this contention, and we review its determination de novo.  Ruivo v. Wells Fargo Bank, N. Am., 766 F.3d 87, 90 (1st Cir. 2014).

We agree with the district court and hold that the payment of a performance-based commission does not foreclose the application of section 778.114 with respect to the salary portion of the pay structure at issue.

Lalli was paid a fixed salary for whatever hours he worked, and Lalli's earned commissions were added to his regular rate calculation.  GNC then paid Lalli a 50% premium on top of the regular rate for all overtime hours worked.  Based on the plain language of the federal regulations at issue, GNC's compensation

---

[3] Plaintiff appears to tactically avoid invoking the word "salary" at various points in his pleadings and papers.  The district court found that Plaintiff was paid a salary and commissions, and Plaintiff seems to imply that he was salaried in his briefing.  We find no reason to imbue a clear record with ambiguity on this point and proceed accordingly.

arrangement would seem to pass muster. Plaintiff demurs, pointing first to our decision in O'Brien and next to the DOL's interpretive bulletins. We turn to O'Brien first.

In O'Brien, this Circuit considered whether the pay scheme established in a collective bargaining agreement ("CBA") between a town and its police officers satisfied the fixed salary requirement of 29 C.F.R. § 778.114(a). 350 F.3d at 286-90. Under the CBA, officers worked four shifts every six days, each shift being eight hours. Id. at 282. Officers received 1/52 of a yearly "base salary" each week regardless of how many hours they worked that week. Id. at 283.

The CBA also included contractual overtime and shift-differential pay. For the former, an officer would receive contractually stipulated overtime pay at a rate of time-and-a-half for each hour worked in excess of eight hours on any given shift, whether or not the officer was entitled to overtime under the FLSA at the end of the week.[4] Id. at 282. For the latter, an officer

--------

[4] For example, an officer who worked three eight-hour shifts and one ten-hour shift in a given week would be entitled to two hours of contractual overtime at a rate of one and one-half the regular rate, but because the officer did not work in excess of forty hours during the workweek there would be no entitlement to FLSA overtime. O'Brien, 350 F.3d at 282 n.6.

would receive an additional $10 per week for any week in which the officer worked a nighttime shift.  Id. at 283 n.7.

This Circuit held that both the contractual overtime and the shift differential meant that the officers did not receive a "fixed amount as straight-time pay" for whatever hours they worked. Id. at 289.  For this reason, the compensation scheme did not meet the second, "fixed salary" condition of section 778.114's four-factor test for calculating overtime.  Id. at 289-90.

Plaintiff points to some of O'Brien's broader language in an attempt to extend its holding to the circumstances before us.  This attempt fails.  O'Brien examined two forms of compensation that were ruled to be incompatible with section 778.114.  Neither of these forms of compensation is before us, and both are distinguishable from the commissions at hand.

With respect to contractual overtime, we noted that "the officers receive[d] more or less straight-time pay depending on how many contractual overtime hours they work[ed] each week."  Id. at 289.  This was inconsistent with section 778.114, which clearly states that "the salary may be paid [an employee] pursuant to an understanding with his employer that he will receive such fixed amount as straight time pay for whatever hours he is called upon to work in a workweek, whether few or many." (emphasis added).

- 11 -

Unlike in O'Brien, the employee here received a fixed salary that did not vary based on the number of hours worked. Thus, O'Brien is inapposite on this point.

With respect to shift-differential pay, however, the compensation varied "even without reference to the number of hours worked." Id. at 288. Rather, the compensation varied with the type of hours worked because nighttime hours were more valuable than daytime hours. Id. The O'Brien court held that this too "does not fit the § 778.114 mold" and made quick work of the provision, pointing out that merely assuring a level of "fixed minimum" compensation is not sufficient to place a pay scheme within section 778.114. Id.

Although the town purported to pay a "base salary," the salary could not actually be called "fixed" with respect to the hours worked because the compensation for those hours varied from week to week. Simply put, one cannot have a "fixed salary" based on all hours worked if all hours worked do not fall within that fixed salary. Therefore, because the shift-differential pay was part of the officers' salary, it "require[d] the larger conclusion" that the officers did not receive a fixed salary "as straight time pay for whatever hours [they were] called upon to work in [the]

workweek." Id. at 289, 288 (citing 29 C.F.R. § 778.114) (emphasis added).

Plaintiff tries to draw a broader lesson from the O'Brien language and argues that any additional form of compensation that must be factored into an employee's regular rate removes the pay scheme as a whole from the purview of section 778.114 because employees must receive a "fixed amount" for straight-time labor each week. See id. at 289. This is based on O'Brien's use of the term "straight-time pay," which refers to pay for normal, non-overtime hours. See Manning v. Bos. Med. Ctr. Corp., 725 F.3d 34, 55 (1st Cir. 2013).

This view, while tenable, is ultimately unpersuasive because it inflates the import of a single sentence in our decision to find answers to questions that were not asked there. Unlike in O'Brien, the salary here remains fixed regardless of the number or type of hours worked. Only the commissions vary. Returning to the DOL's own language, it is evident that "[t]he regulation does not expressly preclude payment of such bonuses." Switzer v. Wachovia Corp., No. CIV.A. H-11-1604, 2012 WL 3685978, at *3 (S.D. Tex. Aug. 24, 2012).

Section 778.114, by its plain language, requires a fixed salary for hours worked, not a fixed total amount of compensation for the week:

> An employee employed on a salary basis may have hours of work which fluctuate from week to week and the salary may be paid him pursuant to an understanding with his employer that he will receive such fixed amount as straight time pay for whatever hours he is called upon to work in a workweek, whether few or many. (emphasis added).

The "fixed amount as straight-time pay" referred to in O'Brien, 350 F.3d at 288, is the same "fixed amount as straight time pay" referred to in the text above, 29 C.F.R. § 778.114(a). This, in turn, refers to the "fixed salary" otherwise mentioned throughout the regulation. See id. And the term "salary," of course, cannot be read so broadly as to encompass all forms of compensation comprising the regular rate. As the district court pointed out, section 778.117 speaks of commissions being paid "in addition to a guaranteed salary," a phrase that makes little sense if commissions are already part of the employee's salary. Similarly, section 778.109 states that it is the "total remuneration" (except statutory exclusions) that must be included in the regular-rate calculation, suggesting that different types of remuneration

- 14 -

(e.g., salary plus commissions) may be combined in a compliant compensation plan.

The premiums in O'Brien betrayed any claim that the officers' salary could be described as fixed regardless of the hours worked, even if part of that salary (the so-called "base salary") did not fluctuate. As both the O'Brien court and other courts have noted, the regulation requires that the fixed salary cover whatever hours are worked, not merely that "the employees receiv[e] a minimum salary every week." See Adeva v. Intertek USA, Inc., No. CIV.A. 09-1096, 2010 WL 97991, at *3 (D.N.J. Jan. 11, 2010); accord O'Brien, 350 F.3d at 288 ("[I]t is not enough that the officers receive a fixed minimum sum each week.").

In the instant case, the employee was paid on the combination of a salary basis under section 778.114 and a commission basis under section 778.118. The employee had "hours of work which fluctuate[d] from week to week" and the "salary [was] paid him pursuant to an understanding . . . that he [would] receive such fixed amount as straight time pay for whatever hours he [was] called upon to work in [the] workweek." The fact that Lalli was given additional commissions as straight-time pay for whatever eligible sales he made does not detract at all from the fact that

- 15 -

he was given his <u>salary</u> as straight-time pay for whatever <u>hours</u> he worked.

Plaintiff would have us rewrite section 778.114 in the following manner to be restrictive rather than illustrative:

> An employee [may be] employed on a salary basis . . . [for] hours of work which fluctuate from week to week . . . [only if] the salary . . . [is] paid him pursuant to an understanding with his employer that he will receive [<u>only</u>] such fixed amount as straight time pay for . . . [the workweek].

We cannot, and should not, ignore the plain language of the regulation, especially when doing so runs counter to the statute's inherently flexible nature. See <u>149 Madison Ave. Corp.</u> v. <u>Asselta</u>, 331 U.S. 199, 203-04 (1947) ("It was not the purpose of Congress in enacting the [FLSA] to impose upon the almost infinite variety of employment situations a single, rigid form of wage agreement."). In short, Lalli's dissection of <u>O'Brien</u> mistakes the forest for the trees. GNC's compensation structure fits comfortably within DOL regulations and nothing in <u>O'Brien</u> compels us to hold otherwise.

Not only is it therefore unnecessary to extend <u>O'Brien</u> to encompass commissions, it would also be inappropriate to do so. That is because, under section 778.114, performance-based bonuses cannot be said to vary based on the hours worked absent unusual

- 16 -

circumstances not present here. Although both shift-differential bonuses and sales commissions may relate to the type of hours worked in some broad or conceptual sense (insofar as some parts of the day may typically entail more sales than others), a bonus for particular hours worked necessarily varies by the hour worked whereas a commission for sales only incidentally varies by the hour worked.

When an employee is paid a bonus for working a nighttime shift, his pay fluctuates as a direct result of the hour he is called upon to work. His compensation, by definition, varies with respect to the particular hour without regard to whether that hour is spent productively or idly. Thus, any underlying salary could not be called "fixed" with respect to "whatever hours he is called upon to work," as required under section 778.114.

On the other hand, when an employee is paid a bonus for executing a large number of sales, his pay fluctuates as a direct result of those sales. The relative ease with which the sales are made may be incidentally related to the hours worked in theory, but not necessarily related in practice. This distinction matters. An efficient employee may well make more sales during a "typically slow" period than another employee may make during a "typically

busy" period.[5]  Thus, to hold that a sales commission varies based on the hours worked under section 778.114 would cramp the regulation's language to fit a hypothetical state of affairs.[6]  The point being that the time-based bonuses in O'Brien are readily distinguishable from the performance-based bonuses here.

Nor are we alone in this assessment.  Almost[7] every court to have considered whether the "fixed weekly salary" requirement is breached "by paying an employee bonuses tied to performance . . . [has] held, or stated, that, so long as the bonuses and premiums [are] not tied to the number of hours worked by the employee, they [are] consistent with that requirement."  Wills,

---

[5] Moreover, a "typically busy" period may end up unexpectedly slow, whereas a "typically slow" period may end up unexpectedly busy.

[6] In common parlance, if an employee were promoted for taking unpopular hours, he might well be said to have been promoted "based on the hours he worked."  On the other hand, if an employee were promoted for leading the team in sales, it would sound curious (or perhaps jilted) to say he was promoted "based on the hours he worked."

[7] There is at least one not-so-notable exception.  In West v. Verizon Servs. Corp., the district court held that an employer violated the FWW requirements because the plaintiff's hourly rate was below the minimum wage and because her hours did not fluctuate. No. 08 Civ. 1325, 2011 WL 208314, at *11 (M.D. Fla. Jan. 21, 2011). In dicta, the court then stated that plaintiff's "salary was not fixed because she had received various bonus payments and commissions." Id.  The court offered no citations or analysis to support this proposition.

981 F. Supp. 2d at 256-57 (citing Lance v. Scotts Co., No. 04 Civ. 5720, 2005 WL 1785315 (N.D. Ill. Jul. 21, 2005); Brantley v. Inspectorate Am. Corp., 821 F. Supp. 2d 879 (S.D. Tex. 2011); Soderberg v. Naturescape, Inc., No. 10 Civ. 3429, 2011 WL 11528148 (D. Minn. Nov. 3, 2011); Switzer, 2012 WL 3685978).

Meanwhile, "almost every court . . . ha[s] held that paying an employee hours-based, or time-based, bonuses and premiums—-such as extra pay for holiday, weekend, or night work—-offend[s] § 778.114's requirement of a 'fixed weekly salary.'" Id. at 255-56 (citing Ayers v. SGS Control Servs., Inc. (Ayers II), No. 03 Civ. 9078, 2007 WL 3171342 (S.D.N.Y. Oct. 9, 2007); Brantley, 821 F. Supp. 2d 879; Brumley v. Camin Cargo Control, Inc., No. 08 Civ. 1798, 2010 WL 1644066 (D.N.J. Apr. 22, 2010); Adeva, 2010 WL 97991; Dooley v. Liberty Mut. Ins. Co., 369 F. Supp. 2d 81 (D. Mass. 2005); O'Brien, 350 F.3d 279). This reflects a clear and well-reasoned distinction between the two forms of compensation. Because Lalli's salary was not "based on the time or type of work assignment," Brantley, 821 F. Supp. 2d at 890, and Lalli's commissions were not tied to the hours worked, the instant case falls within this persuasive line of authority.

Next, we turn our attention to Plaintiff's second argument regarding section 778.114: the impact of the DOL's April

- 19 -

2011 bulletin. In July 2008, the DOL proposed a change to section 778.114 that would have made it so "[p]ayment of overtime premiums and other bonus and non-overtime premium payments will not invalidate the 'fluctuating workweek' method of overtime payment . . . ." 73 Fed. Reg. 43654, 43670 (July 28, 2008). In April 2011, the DOL rejected this proposal because it "believe[d] the principles for including bonuses in the regular rate discussed in other sections of the regulations [were] clear, [and it did] not find that further clarifications or additional cross-references [were] necessary in [§ 778.114]." 76 Fed. Reg. 18832, 18849 (Apr. 5, 2011). According to Plaintiff, this rejection shows that section 778.114 is inapplicable whenever bonuses are included in a pay scheme.

Plaintiff's invocation of the DOL bulletin fails for the same reasons his invocation of O'Brien is left wanting. The bulletin cites strictly to hours-based cases, employs hours-based examples, and tailors its reasoning to concerns raised by hours-based bonuses and premiums. The bulletin offers no guidance whatsoever on performance-based commissions.

With respect to case authority, the DOL suggests that its rejection of the proposed change is consistent with the federal courts' interpretation of the regulation. 76 Fed. Reg. at 18850.

- 20 -

The cases cited for this proposition all deal with variations in compensation by the number and type of hours worked. See id. (citing O'Brien, 350 F.3d 279 (contractual overtime and night-shift pay); Adeva, 2010 WL 97991 (day-off pay, off-shore pay, and holiday pay); Dooley, 369 F. Supp. 2d 81 (weekend pay); Ayers v. SGS Control Servs., Inc. (Ayers I), No. 03 CIV. 9078, 2007 WL 646326 (S.D.N.Y. Feb. 27, 2007) (sea pay and day-off pay)). None of the performance-based commission cases, on the other hand, were directly cited or drawn into question. As such, the DOL's decision to leave the regulation alone means that the bulletin would have done nothing to change the federal courts' existing "treatment of that precise issue." Wills, 981 F. Supp. 2d at 252.[8]

---

[8] Some of the performance-based commission cases point out that the pay schemes at issue predated the DOL's April 2011 bulletin. See, e.g., Switzer, 2012 WL 3685978, at *4-5. This seems to us immaterial. The bulletin did not address performance-based bonuses and rejected proposed changes to the rule, thereby leaving the state of the law unchanged with respect to such commissions. See Wills, 981 F. Supp. 2d at 258 (noting that the pre-Final Ruling case law "is in fact quite relevant" because "[i]t shows how courts have interpreted the language of § 778.114, which, significantly, the Final Ruling left intact"). In short, the rule already prohibited the use of hours-based bonuses in conjunction with the FWW method and, contrariwise, already permitted the use of performance-based bonuses prior to the rejected proposal. Nothing changed. See 76 Fed. Reg. at 18850 ("The Department does not believe that it would be appropriate to expand the use of [the FWW] method of computing overtime pay beyond the scope of the current regulation. Accordingly, the final rule has been modified from the proposal to restore the current rule . . . .").

If anything, the DOL bulletin indirectly approved of the developing distinction between time-based and performance-based bonuses. The bulletin cites Adeva among its list of cases showing "that the courts have not been unduly challenged in applying the current regulation to additional bonus and premium payments." 76 Fed. Reg. at 18850. In Adeva, the defendants attempted to rely upon the Lance decision to support their hours-based bonuses, but the court found the defendants' comparison to the commission case "misplaced." Adeva, 2010 WL 97991, at *3 n.2 (citing Lance, 2005 WL 1785315). The Adeva court distinguished the holding in Lance, noting that "[t]he case at bar does not deal with the payment of commissions," and pointed out that "commission fluctuations are permissible under DOL regulations" per sections 778.117 and 778.118.[9] Id. Presumably, the DOL read the Adeva decision in full before citing it with favor.

The language and reasoning of the bulletin further confirm its sole focus on hours-based bonuses. The bulletin

---

[9] The Lance decision dealt with a pay scheme involving both a salary component and a commissions component. 2005 WL 1785315, at *2. The court found that the plaintiff received a fixed salary, and that the fluctuations in commissions did not mean that the salary itself was not "fixed" for purposes of section 778.114. Id. at *4-7. Instead, the court pointed to sections 778.117 and 778.118 to show that such a method of calculating overtime pay was "specifically contemplated and authorized by the DOL." Id. at *6.

- 22 -

discusses bonuses "for certain <u>activities</u> such as working <u>undesirable hours</u>," 76 Fed. Reg. at 18849 (emphasis added), and raises the concern that shifting compensation into such bonus payments could "potentially resul[t] in wide disparities in employees' weekly pay <u>depending on the particular hours worked</u>," <u>id.</u> at 18850 (emphasis added). As discussed above, the relationship between sales and "the particular hours worked" is incidental at best, and we do not believe that the DOL would consider "doing your job" to be an altogether different "activity" than "doing your job <u>well</u>."

In sum, neither the <u>O'Brien</u> decision nor the DOL's April 2011 bulletin reach or answer the particular question posed here: whether a compensation structure employing a fixed salary still complies with section 778.114 when it includes additional, variable performance-based commissions. We hold that it does. Courts have almost uniformly distinguished between hours-based bonuses and performance-based commissions in evaluating whether an employee's compensation structure is permissible under section 778.114, and we join that line of reasoning today. In order for the DOL to exclude such agreements from the regulation, it would have to interpret section 778.114 contrary to almost every court

to rule on this question,[10] and it would have to ignore the plain language of the adjacent regulations governing commissions, which seem to specifically envision, and endorse, such agreements. We do not think the DOL has interpreted, or would interpret, section 778.114 in such a manner, and we do not read section 778.114 to impose any such restriction.

GNC's pay scheme epitomizes the compensation arrangements illustrated in sections 778.114 and 778.118, and the mere combination of these two permissible methods does not render the former inapplicable. We need go no further based on the record before us.[11]

### III. Conclusion

For the foregoing reasons, the judgment is AFFIRMED.

---

[10] See Wills, 981 F. Supp. 2d at 263 ("It is doubtful that DOL can reverse the courts' uniform construction of the plain language of an interpretive regulation without changing the text of that regulation, let alone without giving notice of its intent to do so and an opportunity for comment.").

[11] Because we hold that the pay scheme complies with the DOL's regulatory examples, we need not separately analyze the arrangement under the FLSA directly. See O'Brien, 350 F.3d at 287 n.15 ("[T]he parties limit their arguments to whether the compensation scheme . . . comports with the regulation, and we confine ourselves to the same question."). We do not mean to imply, however, that a pay scheme must fall within a regulatory example in order to comply with the statute.